936 F.2d 993
 68 Ed. Law Rep. 311
 BOARD OF EDUCATION OF ST. LOUIS, et al., Appellant,
v.
STATE OF MISSOURI, et al.; Special School District of St.
Louis, et al.; United States; National
Association for the Advancement of
Colored People, et al.; Appellees,
St. Louis Teachers' Union Local 420, AFT, AFL-CIO; Intervenor.
Michael C. LIDDELL, a minor, by Minnie LIDDELL, his mother
and next friend; Kendra Liddell, a minor, by
Minnie Liddell, her mother and next
friend; Minnie Liddell; Appellants,
v.
STATE OF MISSOURI, et al.; Special School District of St.
Louis, et al.; United States; National
Association for the Advancement of
Colored People, et al.; Appellees,
St. Louis Teachers' Union, Local 420, AFT, AFL-CIO;
Intervenor.[1]
 Nos. 90-1470, 90-1530, 90-1531, 91-1427, 91-1646, 91-1651.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 4, 1991.
Decided June 13, 1991.
 
 Kenneth C. Brostron, Lashly & Baer, St. Louis, Mo., for City Bd.
 John J. Lynch, Asst. Atty. Gen., St. Louis, Mo., for State.
 William P. Russell, St. Louis, Mo., for Liddell.
 Michael A. Middleton, Columbia, Mo., for Caldwell/NAACP.
 Audrey Fleissig, St. Louis, Mo., for St. Louis County Special & Rockwood.
 Marie McElderry, Washington, D.C.
 Louis Gilden, Charles R. Oldham, St. Louis, Mo., for St. Louis Teachers' Union.
 Before McMILLIAN and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.
 
 
 1
 IN THE MATTER OF THE DESEGREGATION OF THE CITY OF ST. LOUIS
 
 
 2
 SCHOOLS AND THE VOCATIONAL SCHOOLS OF THE CITY OF
 
 ST. LOUIS AND THE SPECIAL SCHOOL
 
 3
 DISTRICT OF ST. LOUIS COUNTY.
 
 
 4
 HEANEY, Senior Circuit Judge.
 
 
 5
 At issue in this appeal is the district court's decision to designate the Special School District of St. Louis County (SSD) as the sole provider of secondary vocational education in the St. Louis area beginning in the 1991-92 school year. Liddell v. Board of Educ., 758 F.Supp. 499 (E.D.Mo.1991). We agree with the district court that the present system of secondary vocational education does not provide the students of the St. Louis metropolitan area with a quality integrated vocational education. We affirm the decision of the district court to transfer the operation and management of vocational education to the SSD, and agree with it that a single system has the best chance of providing a quality integrated vocational education to all students whether they live in the city or the county. We strengthen the district court's order to ensure that a quality integrated vocational education system will be achieved promptly.
 
 
 6
 We will not recount the long history of this case here,[2] as it is imperative that the SSD be prepared to serve all city and SSD students at the opening of school in September 1991. We will instead address the objections raised by the Board of Education of the City of St. Louis (City Board), the St. Louis Teachers Union (Union), and the Liddell plaintiffs to the plan approved by the district court.
 
 
 7
 I. THE DISTRICT COURT'S JURISDICTION.
 
 
 8
 As a preliminary matter, the City Board contends that the district court lacked jurisdiction to enter its 1991 order assigning full responsibility to the SSD for the operation of the metropolitan-area vocational schools. The City Board argues that the pending appeals of the district court's 1990 order deprived the district court of jurisdiction to further supervise the vocational education programs. The City Board relies on the general rule, discussed in Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), that the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over matters involved in the appeal. Id. at 58, 103 S.Ct. at 402. This reliance is misplaced.
 
 
 9
 The district court's orders in this desegregation case are injunctive in nature. See Liddell v. Board of Educ. of City of St. Louis (Liddell IV ), 693 F.2d 721, 724 (8th Cir.1981). The Federal Rules of Civil Procedure provide that when an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the district court may "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed.R.Civ.P. 62(c). The general rule that an appeal deprives a district court of jurisdiction over the issues appealed therefore is not absolute, and under certain circumstances, the district court retains jurisdiction to modify an injunction pending appeal. See 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2904, at 320-25 (1973).
 
 
 10
 The Ninth Circuit has held that:[I]n the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken.
 
 
 11
 Hoffmann v. Beer Drivers & Salesmen's Local Union No. 888, 536 F.2d 1268, 1276 (9th Cir.1976). We believe, and have previously noted, that the nature of the district court's supervision of the vocational education programs in this ongoing litigation requires it to retain "the broadest discretion possible to provide a quality integrated vocational education system for the black and white children of the St. Louis metropolitan area." Liddell XI, 822 F.2d at 1455. Consistent with this view, we stated that " 'the district court expressly retained jurisdiction over the vocational education issues and may take appropriate action at any time sua sponte or upon a motion of any party if implementation of the 12(b) plan does not bring about the anticipated results.' " Id. (quoting Liddell V, 677 F.2d at 636) (emphasis added). As is clear from the record before us, the parties' efforts have yet to bring about the anticipated results.
 
 
 12
 Accordingly, we find that the district court's 1991 order concerning the vocational education plan falls within an exception to the general rule of divestiture of district court jurisdiction. The district court retained jurisdiction to enter its 1991 order notwithstanding the pending appeal of the 1990 order. To conclude otherwise would only further delay achievement of the goal of providing a quality integrated vocational education system to St. Louis students.
 
 
 13
 II. THE DISTRICT COURT'S FAILURE TO HOLD AN EVIDENTIARY HEARING.
 
 
 14
 The City Board, the Liddell plaintiffs, and the Union claim the district court denied them due process because it failed to hold an evidentiary hearing before entering the 1991 order. We disagree. After we remanded this case in Liddell XI, the district court held an extensive, seven-day evidentiary hearing in November 1987 to consider the propriety of merging or consolidating the separate vocational educational systems. Issues explored at the hearing included, among other things, the issues on appeal here: curriculum; program costs; staffing; transportation; and the merits of dual or single governance. All parties in this appeal were represented at that hearing, and none have objected to the procedures the district court followed.
 
 
 15
 After the hearing, the court directed the parties to work out a plan that would designate the Community College as the sole provider of vocational education in the city and the county. This attempt failed. The district court subsequently entered the 1990 order which continued the dual system, but it warned that it would consolidate the vocational education systems if the parties kept "resisting the implementation of court orders." In November 1990, the City Board advised the court that the Board would be able to offer "only a minimal number of vocational programs during the next two years," and that it needed an additional six months to file a revised vocational education plan. The district court subsequently expressed its displeasure at the City Board's inability to provide a quality integrated vocational education system, and entered the January 1991 order in which it discontinued the dual system approach.
 
 
 16
 Given this background, we conclude that the district court did not abuse its discretion or deny the parties due process by failing to hold a hearing before it entered the January 1991 order. After the 1990 order, all parties were on notice that the court could and would consolidate the vocational education systems if necessary. More importantly, the parties all had an opportunity to be heard in 1987. The relevant issues were thoroughly explored then, and the court's 1990 and 1991 orders flowed directly from the results of that hearing. There was no need for a further hearing on the same issues.
 
 
 17
 III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DESIGNATING THE SSD AS THE SOLE PROVIDER OF VOCATIONAL EDUCATION FOR CITY AND SSD VOCATIONAL EDUCATION STUDENTS.
 
 
 18
 A. The order is remedial in nature.
 
 
 19
 The City Board argues that the district court's January 1991 order did not establish racial goals and thus is not remedial. We disagree. While the order itself does not set forth racial goals, the order incorporated without modification most of the 1990 SSD plan, including that portion of the SSD plan that set forth racial goals.
 
 
 20
 The SSD plan provides that the SSD "shall work toward achieving a racial balance for the aggregate student body at each school of 50% white, 50% black with a 5% variance." These percentages are consistent with those discussed in Liddell XI, 822 F.2d at 1459, where the district court had mandated that each vocational school in the system meet racial goals of 55% white/45% black with a 10% variance. We do not view the goals in the SSD plan as mere window dressing. They are goals that must be met in a timely fashion, and we are fully confident that the district court will ensure that they are complied with.
 
 
 21
 The City Board also claims that the order is not remedial because it forces black city vocational education students to attend school in the county rather than in the city. Although this contention has some merit, we see no feasible alternative. Nearly all city students are now being transported to and from school each day. The travel times will be only marginally longer under the district court's plan; some city students will be able to attend school in a city facility as soon as the SSD fully implements its plan, and some county students will attend school in the city when the plan is fully implemented.
 
 
 22
 We emphasize that it is vitally important that the SSD operate vocational education facilities in the city, and that no site be developed in a racially discriminatory manner.
 
 
 23
 B. The district court order designating the SSD as the sole provider of vocational education for area students, as modified, will sufficiently protect the interests of city parents and students.
 
 
 24
 The City Board and the Liddell and NAACP plaintiffs are properly concerned with the fact that the SSD Board of Education is elected exclusively by the voters of the SSD, and thus might not be expected to have the interests of the city students at heart. The district court appreciated these concerns but decided:
 
 
 25
 [T]he city students ... need a vocational education program and they need it now. The only entity capable of providing a viable ongoing vocational educational program to city students is the Special School District.
 
 
 26
 We agree with the district court and add that the district court has always had the power to consolidate the dual system. In Liddell V, we held that:
 
 
 27
 a complete merger of the SSD and city board's vocational system could be ordered under the express terms of the 12(b) plan if the plan fails to effectively desegregate the metropolitan vocational education schools by the end of the 1985-86 school year.
 
 
 28
 677 F.2d at 636; see also Liddell XI, 822 F.2d at 1460.
 
 
 29
 If the SSD does not fulfill its obligation to provide a quality integrated vocational education for the students of both the city and the SSD, the merger-consolidation alternative remains viable. To insist, however, that the merger-consolidation alternative be implemented now would create further delays, delays which would further harm the students who need a vocational education now to hold a job in a society that increasingly demands technical competence. Under the district court plan, a program that will meet the needs of all students should be in place by the opening of the 1991-92 school year.
 
 
 30
 The district court also decreed the following measures (set forth in bold print) to ensure that the SSD fully meets the needs of city students seeking a vocational education. We agree with these measures in general, but add some modifications to strengthen the voice of city parents and to improve the education of city students.
 
 
 31
 (1) That the SSD establish a curriculum and recruitment advisory committee composed of the superintendents of each of the sending districts. This committee is essential. The record reveals that many county school districts and the city district operate vocational education programs which have competed and will continue to compete with those offered by the SSD. The committee has the responsibility to make sure that duplication of programs is minimized. We expect the committee will ensure that all school districts publicize the SSD's vocational programs to their students and that each district will cooperate fully in the SSD's recruitment and marketing efforts. The committee shall, on a periodic basis, seek the advice and counsel of representatives of industry and labor who are familiar with the needs of industry for technically trained young workers. It appears from the record that SSD, the City Board, and the Metropolitan Coordinating Council all have recruiting and marketing programs. These programs should be coordinated. Recruitment in the next few years will be particularly difficult. It is thus imperative that recruiting and marketing programs be fully funded and professionally administered.
 
 
 32
 (2) That a special grievance procedure be established for city and county transfer students. This grievance procedure will apply to all students. This procedure will permit the students to resolve problems including those relating to discrimination, transportation, or course offerings. The procedure should be simple and readily available.
 
 
 33
 (3) That the Metropolitan Coordinating Council and its function shall continue as heretofore, with one change; that change being that the city representative shall be the superintendent of the St. Louis Public Schools, or his/her designee. We approve of the change and we additionally direct that the Council be expanded to include one representative of the NAACP plaintiffs, and two representatives selected from principals or teachers currently involved in vocational education--one from the city and one from the SSD. These educators, designated by their respective superintendents, are to give the Council first-hand advice as to how vocational programs are actually working. In addition, the district court shall direct the Council to provide quarterly reports directly to the court as to the operation of the SSD vocational programs, including whether the desegregation goals outlined herein are being met.
 
 
 34
 Reflective of our concern that city parents and residents ultimately have a stronger voice in the operating of the SSD, we direct that when the 1991-92 school year is well under way, the district court appoint a study committee consisting of representatives of the State, the City Board, the SSD Board of Education--or their designees--, and the public, to consider how city residents can be given an appropriate voice in the affairs of vocational education in the greater St. Louis area. This consideration should include the alternatives of merger or consolidation.
 
 
 35
 C. The SSD has available to it sufficient resources to provide a quality integrated program of vocational education for all metro area students.
 
 
 36
 The City Board is concerned that the SSD does not have available to it the financial resources necessary to provide a quality integrated program of vocational education for county and city students alike. The SSD assures this court that that is not the case. It asserts that it has the resources to meet all expected expenditures in the years ahead, including those necessary to meet the needs of an expanded student body and to provide vocational education facilities and programs in the city. It states that it has ample funding which can be used to make sure that the vocational education program meets contemporary needs and is available to city as well as county students. We accept these representations. We further note that if additional funds are required, it is within the power of the district court to ensure that the funds necessary to provide a quality integrated education are provided. See Missouri v. Jenkins, --- U.S. ----, ---- - ----, 110 S.Ct. 1651, 1664-67, 109 L.Ed.2d 31, 56-58 (1990).
 
 
 37
 The City Board is particularly concerned because the SSD has the responsibility for all special education activities in the county as well as vocational education. It fears that the SSD may put more emphasis on the important services it provides to the special education students and may slight city students seeking vocational education. Again, the SSD assures this court that that will not be the case; that it fully intends to design, develop, and implement vocational programs which will fully meet the needs of both city and county students and that these facilities and programs will be established in both the city and the SSD. We accept these commitments. We are, moreover, confident that the district court will make sure that they are fulfilled within the city.
 
 
 38
 IV. PROTECTION OF THE CITY DISTRICT'S FACULTY AND STAFF.
 
 
 39
 The district court order provides that "each district shall re-employ its current and returning staff to the fullest extent possible utilizing all seniority rights and privileges." The Union asserts that the district court's order violates the due process rights of permanent teachers employed by the City Board by eliminating their jobs without providing them with notice and a hearing. The Union also claims that the order discriminates against the predominantly black city vocational education teachers. The Union further argues that when it discussed this matter with the SSD, the only response the Union received was that displaced teachers could apply for jobs with the SSD.
 
 
 40
 We approve of the district court order and supplement it by adding a requirement that qualified vocational education teachers employed by the City Board be given priority for any positions which are not filled with existing faculty members of the SSD and for any positions which may open in the future. Every effort shall be made to permit city teachers hired by the SSD to transfer their pension, health insurance, sick leave, vacation, and other benefits, the details to be worked out by the Union and the SSD under the direction of the district court.
 
 
 41
 This decision does not foreclose the city teachers from bringing an independent action in the future to determine the constitutional rights they now assert. We cannot finally resolve this question now, however, because the record is incomplete, the district court has not ruled on the matter, and we have no way of knowing the identity of any teachers who may be prejudiced.
 
 
 42
 V. ALLOCATION FOR TRANSPORTATION COSTS FOR INTERDISTRICT TRANSFERS OF VOCATIONAL EDUCATION STUDENTS.
 
 
 43
 The district court order provides that "the City Board shall pay transportation costs pursuant to the provisions of Sec. 178.510 R.S.Mo. and all applicable rules and regulations. Transportation costs shall be reimbursed from the State School Monies Fund as provided in Sec. 163.161 R.S.Mo. and all applicable rules and regulations." We approve this provision only to the extent that it involves the cost of transporting city students to SSD facilities located in the City of St. Louis or the transportation of SSD students to facilities within the SSD. All interdistrict transportation costs are to be paid in full by the State in accordance with this court's opinion of Liddell XI, 822 F.2d at 1458-59.
 
 
 44
 VI. ALLOCATION OF THE COST OF EQUIPMENT TRANSFERS.
 
 The district court order provides:
 
 45
 Equipment shall return with the appropriate program to the originating district. As the City Board will no longer operate vocational secondary programs, it will no longer need the equipment which accompanied relocated programs, except those relocated to O'Fallon for use in the Gateway High School. Therefore, the equipment shall return with the appropriate program to the originating district with the originating district responsible for moving costs. The City Board shall dispose of its excess vocational education equipment in accordance with state and federal rules and regulations.
 
 
 46
 We understand the district court's order to mean that all equipment transferred from the SSD to the City Board in the past shall, on request, be returned to the SSD with the SSD to bear the cost of dismantling, transporting, and restoring the equipment for use in the SSD. We further understand it to mean that if the SSD desires to use any equipment which is owned by the City Board and is not needed by the City Board for its vocational program, the SSD will be permitted to purchase this equipment from the City Board and to transport that equipment at the SSD's own expense.
 
 CONCLUSION
 
 47
 It is imperative that a quality integrated vocational education program be made available to the students of the greater St. Louis area at the beginning of the 1991-92 school year. We have been told by all parties that they want to improve vocational education in the metropolitan area, but that they are unable to do so because the district court lacked jurisdiction, because the district court impaired the teachers' contract, and because the district court disenfranchised the patrons of the city school district. We cannot accept these excuses.
 
 
 48
 Students must be the primary concern. The State of Missouri, the City Board, the SSD, and the county districts all have an obligation to provide quality integrated vocational education programs for the young men and women in the greater St. Louis area. The plan enunciated by the district court stands a reasonable chance of accomplishing that goal if it is promptly and effectively implemented without the foot-dragging that has accompanied the efforts to desegregate vocational education schools in the past. Because we believe that the district court's plan has a chance to work, and to work now, we affirm the district court's orders, with the few exceptions noted in this opinion. Each party to this appeal is to bear its own costs, except that the costs of the Liddell appellants and the NAACP will be divided equally among the State of Missouri, the SSD, and the City Board.
 
 
 
 [1]
 The full caption of this case, some thirteen pages in length, is on file in the office of the Clerk of the United States Court of Appeals for the Eighth Circuit
 
 
 [2]
 See Liddell v. Board of Educ. of City of St. Louis, 491 F.Supp. 351, 358 (E.D.Mo.1980), aff'd, Liddell v. Board of Educ. of City of St. Louis (Liddell III ), 667 F.2d 643, 651 (8th Cir.), cert. denied, 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614 (1981); Liddell v. Board of Educ. of City of St. Louis (Liddell V ), 677 F.2d 626, 632-38 (8th Cir.), cert. denied, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 142 (1982); Liddell v. Board of Educ. of City of St. Louis, 654 F.Supp. 334 (E.D.Mo.1987), aff'd and modified, Liddell v. Board of Educ. of City of St. Louis (Liddell XI ), 822 F.2d 1446 (8th Cir.1987); Liddell v. Board of Educ. of City of St. Louis (Liddell XIII ), 830 F.2d 823, 830-31 (8th Cir.1987)