900 P.2d 1352

Rodney C. PAYNE, James Solecki and Marci Solecki, husband and wife, Donald Purcell and Peggy Purcell, husband and wife, John R. Ferebauer, Rex Brown and Kaye Brown, husband and wife, John Kelly and Janice Kelly, husband and wife, Scott Haroldsen and Pat Haroldsen, husband and wife, Hart L. Grover and Laura Grover, husband and wife, Brent Holland and Karalyn Holland, husband and wife, Donald M. Watson and Maxine Watson, husband and wife, Ladene Gardner, an individual, Burnell Clark and Ruth Clark, husband and wife, Dwight Taylor and Carol Taylor, husband and wife, John Does 1 through 20, individuals. Plaintiffs–Respondents–Cross Appellants,

and

The City of Idaho Falls, a municipal corporation, Plaintiff–Respondent,

v.

Keith SKAAR and Cherie Skaar, husband and wife; and Keith Skaar Farms, Inc., an Idaho Corporation, Defendants–Appellants–Cross Respondents.

No. 20392.

Supreme Court of Idaho, Boise, January 1995 Term.

Aug. 10, 1995.

342

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, Boise, for appellants. J. Walter Sinclair argued.

Hopkins, Roden, Crockett, Springer & Hoopes, Idaho Falls, Dale W. Storer for respondents. C. Timothy Hopkins argued.

SILAK, Justice.

In this nuisance case, the named plaintiffs are a group of landowners near Idaho Falls (hereafter "Citizens"). They filed a lawsuit against Keith and Cherie Skaar, and Keith Skaar Farms, Inc. (collectively "Skaar"), the owners and operators of a cattle feedlot near Idaho Falls. The lawsuit sought to stop Skaar from operating the feedlot in a manner that causes intolerable odors, dust, and flies in Citizens' neighborhood. The district court found the Skaar feedlot was a private nuisance as to Citizens, and ordered injunctive relief, but awarded no damages. We affirm.

## ISSUES ON APPEAL

1. Did the district court err in ruling that the Idaho Right to Farm Act is inapplicable?

2. Are the district court's findings of fact on the issue of private nuisance supported by substantial, competent evidence?

3. Is proof of damage required to prevail on a private nuisance claim?

4. Did the district court err in holding that it had jurisdiction under I.R.C.P. 62(c) to modify the November 1992 injunction during pendency of the appeal?

5. Did the district court err in denying Skaar's motion for a jury view?

## CROSS–APPEAL

1. Did the district court err in not permanently enjoining the feedlot from further operation, after the original injunction failed to abate the nuisance?

## FACTS AND PROCEDURE

The Skaar feedlot began operating in 1971, and over time expanded its operation. During 1985 through 1987, the feedlot handled between 1,000 and 2,500 head of cattle. In 1988, Skaar expanded the capacity to 3,500 cattle, and in 1988–1989, fed between 1,500 and 3,500 head. Skaar expanded the capaci-

ty to approximately 5,000 head, and fed between 2,500 and 3,700 cattle in 1990. In 1991, Skaar fed between 3,200 and 4,900 cattle. At the time of trial in 1992, the feedlot held approximately 3,200 head.

In 1987, Skaar became dissatisfied with the rate the cattle were gaining weight. On the recommendation of a cattle nutritionist, Skaar altered the finish ration by increasing the amount of potato slurry and corn, and decreasing the amount of silage. From 1987 through 1992, the ration remained essentially the same: 55% potato slurry, 40% corn, 2½% supplements, 1½% hay, and 1% hay silage and corn silage.

From the mid–1980's to the present, the feedlot has operated within industry standards and in conformity with federal, state and local laws and regulations. From the mid–1980's to the present, the feedlot has been continuously well managed and operated. It is located within a zone classification which permits such a use.

The district court found that commencing in about 1988, Citizens began to experience offensive odors, unusual amounts of dust, and an increase in the amount of flies on their properties. The court found that the odors and dust clouds were caused by the Skaar feedlot, and carried by wind to Citizens' properties. The feedlot operates twenty-four hours a day, seven days per week.

In August 1991, Citizens and the City of Idaho Falls filed a Complaint against Skaar alleging, among other things, public and private nuisance. The trial took twelve days during the fall of 1992. After the presentation of Citizens' case, Skaar moved for a directed verdict on the nuisance claims under the Idaho Right To Farm Act (RTFA), I.C. § 22–4501 through 22–4504, which the district court denied. The advisory[1] jury found in favor of Citizens on their claims of private nuisance, but awarded no damages to any of the plaintiffs. The jury further rejected the public nuisance claims of Citizens and the City of Idaho Falls.

On November 12, 1992, the district court entered its Findings of Fact, Conclusions of Law and Judgment. The court concluded that from 1988 to the present the feedlot had constituted a private nuisance to Citizens, but that the individuals were not entitled to recover any damages as a result of the private nuisance, although they were entitled to an injunction to abate the nuisance. The court further ruled that the feedlot did not constitute a public nuisance, and this ruling is not contested on appeal. In Finding No. 38, the district court concluded that the Skaar feedlot odors were caused by a combination of: (a) the dramatic increase in the number of cattle fed at the feedlot, (b) the dramatic increase in the quantity of odor-producing potato slurry used at the feedlot which was increased due to demand and a change in the ration, (c) the addition of corn and the elimination of barley in the finish ration in 1987, and (d) the strong odor generated by corn silage on the property. The November 12, 1992 judgment included an injunction: (1) limiting the maximum number of cattle that may be fed at any given time to 2,500; and (2) altering the finish ration by eliminating corn, adding barley, and reducing the amounts and percentages of potato slurry. The court's judgment declared that it would "continue jurisdiction over the case" until the court could determine if the injunction would abate the nuisance, and if not, whether a permanent injunction preventing all further operations should be ordered.

In December 1992, Skaar filed a notice of appeal. With the appeal pending, Citizens filed a motion in May 1992 for permanent injunction, claiming the initial injunction had failed to abate the nuisance. Skaar filed a memorandum in opposition to the motion for permanent injunction arguing that the district court lacked jurisdiction under I.R.C.P. 62(c) to modify its previous order with the appeal pending. In a Memorandum Decision entered July 1993, the district court rejected Skaar's jurisdictional argument and held that

---

1. Because the private and public nuisance claims are equitable in nature, for which there is no right to trial by jury, the district court considered the jury's verdict on those claims as advisory only.

it had authority to modify the terms of the November 1992 injunction with the appeal pending.

In December 1993, the district court denied Citizens' motion for a permanent injunction, but modified the terms of the November 1992 injunction to require Skaar in addition to remove all existing manure from the feedlot, remove future accumulations of manure three times a year, and remove pens constructed to accommodate more than 2,500 cattle.

In January 1994, Citizens filed their cross-appeal, contending the district court should have permanently enjoined Skaar from further operating the feedlot after the initial injunction failed to abate the nuisance.

## I.

## APPLICABILITY OF RIGHT TO FARM ACT

■ Skaar moved below for a directed verdict arguing that the Idaho Right to Farm Act (RTFA), I.C. § 22–4501 through 22–4504, protects expanding agricultural operations from being declared a nuisance. This issue presents a question of law, over which we exercise free review. *E.g., Ausman v. State*, 124 Idaho 839, 841, 864 P.2d 1126, 1128 (1993).

The RTFA contains certain legislative findings and a statement of intent to guide its application:

> The legislature finds that agricultural activities conducted on farmland in urbanizing areas are often subjected to nuisance lawsuits, and that such suits encourage and even force the premature removal of the lands from agricultural uses, and in some cases prohibit investments in agricultural improvements. It is the intent of the legislature to reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance. . . .

I.C. § 22–4501. The RTFA seeks to shield certain agricultural operations from being declared a nuisance:

> No agricultural operation or an appurtenance to it shall be or become a nuisance, private or public, by any changed conditions in or about the surrounding nonagricultural activities after the same has been in operation for more than one (1) year, when the operation was not a nuisance at the time the operation began; provided, that the provisions of this section shall not apply whenever a nuisance results from the improper or negligent operation of any agricultural operation or an appurtenance to it.

I.C. § 22–4503. Skaar argues that under the RTFA, its operation cannot be declared a nuisance because it (1) has been in operation for more than one year; (2) was not a nuisance when the operation began; and (3) was not operated improperly or negligently.

■ Under Skaar's interpretation, any properly managed agricultural operation more than a year old, which was not a nuisance when the operation began, could thereafter expand without hindrance, and would be absolutely immune from a nuisance claim. The RTFA compels no such interpretation. The RTFA is more specifically tailored to encroachment of "urbanizing areas" (*see* § 22–4501 above) and situations where there have been changes in "surrounding nonagricultural activities" (*see* § 22–4503 above), which is not the case here.

There is little dispute that the neighborhood surrounding the feedlot has remained substantially unchanged during the Skaar feedlot's existence. Indeed, many of the Citizens' residences predated the Skaar feedlot. Citizens claimed the feedlot was a nuisance because of expansions of the feedlot operation, not a change in the surrounding area. The district court correctly concluded the RTFA does not wholly prevent a finding of nuisance in circumstances of an expanding agricultural operation surrounded by an area that has remained substantially unchanged. Accordingly, the district court committed no error in denying Skaar's motion for a directed verdict.

## II.

## SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT NUISANCE FINDING

Skaar challenges one of the district court's findings of fact as not being supported by

substantial and competent evidence, and claims this finding is critical to the court's conclusion that a private nuisance exists. In Finding No. 38, the district court stated "it appears that" the feedlot odors were caused by a combination of: (a) the dramatic increase in the number of cattle fed at the feedlot, (b) the dramatic increase in the quantity of odor-producing potato slurry used at the feedlot which was increased due to demand and a change in the ration, (c) the addition of corn and the elimination of barley in the finish ration in 1987, and (d) the strong odor generated by corn silage on the property. Skaar asserts there was no evidence tying the increase in potato slurry in the ration to an increase in odor, or the increase in corn and decrease in silage to an increase in odor.

 Citizens contend the district court's conclusion of a private nuisance does not rest solely on Finding No. 38, but is supported principally by Finding No. 28 of the November 1992 judgment. Finding No. 28 continues for ten pages with descriptions of each plaintiff's testimony graphically describing the offensive conditions created by the feedlot.

We agree with Citizens that Finding No. 38 is not necessary to the district court's conclusion that "the Skaar feedlot from 1988 to the present has constituted a private nuisance to the individual plaintiffs." The paramount issue is whether the feedlot in fact generated the complained of odors, dust, and flies, not whether the district court's inferences were correct as to what "appeared to" cause the odors and dust. Even if this Court overturned Finding No. 38, sufficient evidence is contained in the record to support the conclusion that the feedlot constituted a private nuisance. We hold that the district court's finding and conclusion that the feedlot constituted a private nuisance is supported by substantial, competent evidence, with or without Finding No. 38.

### III.

### PROOF OF DAMAGE FOR NUISANCE CLAIM

The advisory jury below found a private nuisance, but awarded no damages to the Citizen plaintiffs. The district court ruled likewise, and entered judgment accordingly. Skaar contends an award of damages is a prerequisite to a finding of nuisance or issuing an injunction. We freely review this question of law.

 Nuisances are defined by statute:

**Nuisance defined.**—Anything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, stream, canal, or basin, or any public park, square, street, or highway is a nuisance.

I.C. § 52–101. The statutory definition is not limited to things which cause damage. Idaho law also provides that nuisances "may be enjoined or abated, as well as damages recovered."

**Actions for nuisance.**— ... [T]he action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, *as well as damages recovered.*

I.C. § 52–111 (emphasis added). Damages may be recovered along with an injunction or abatement, but we find no statutory requirement that the complainants prove an entitlement to monetary damages before a nuisance can be enjoined or abated. Indeed, it may be difficult to assert and prove damages from nuisances which are merely indecent, injurious to morals, or offensive to the senses. Yet, in those circumstances, a claimant might conclusively establish the need for an abatement. Here, the jury's failure to award damages did not necessarily mean the Citizens' senses or personal enjoyment of their property were never adversely affected. Under the statutes, damages may be recovered *in addition to* an injunction or abatement, but are not a *prerequisite* to such equitable relief.

Likewise, we find no case precedents establishing damages as a necessary element of a nuisance claim. Skaar cites the following language from *Conley v. Amalgamated Sugar Co.*, 74 Idaho 416, 263 P.2d 705 (1953):

> There thus being substantial evidence supporting the three essential elements: first, existence of a nuisance, second, damage thereby to respondents' business, and third, extent of money damage to respondents' business, to sustain the findings and decree, the same must be and is affirmed.

74 Idaho at 424, 263 P.2d at 710. In *Conley*, a store owner sought injunctive relief and damages due to a nuisance. The appeal in *Conley* raised no question regarding the injunction; rather, the appeal was "from only the portion of the decree awarding damages." *Id.* at 420, 263 P.2d at 707. The above passage deals with the claimant's burden of proof to support the damages claim and not the elements of proof to establish a nuisance.

We recognize that Idaho Jury Instruction No. 490 [2] lists damages as an element of a nuisance claim. But the element of damages applies only when the action seeks an award of damages in addition to an injunction or abatement. In other words, to receive an award of damages, the claimant must establish the right of recovery and the extent of the injury, as with any damage claim. *See, e.g., Conley, supra*, 74 Idaho at 423, 263 P.2d at 709 (where it is shown damages resulted, difficulty in arriving at exact amount does not prevent damage award, it is for trier of fact to fix amount); *Pollard v. Land West, Inc.*, 96 Idaho 274, 279, 526 P.2d 1110, 1115 (1974) (discomfort, annoyance, and inconvenience are appropriate elements of a damage award in nuisance case). The failure to recover damages does not necessarily mean there can be no injunction or abatement, if that equitable relief is otherwise appropriate. For instance, in *Hansen v. Independent School Dist. No. 1*, 61 Idaho 109, 98 P.2d 959 (1939), this Court ruled night baseball games were a nuisance and awarded injunctive relief without also entering an award of damages. We hold that the district court's November 1992 injunction is not invalidated by the lack of a corresponding award of monetary damages.

## IV.

## JURISDICTION TO MODIFY INJUNCTION WITH APPEAL PENDING

We next address a jurisdictional issue. The November 12, 1992 judgment provided that the district court would retain jurisdiction to determine whether the relief granted abated the nuisance:

> This court will continue jurisdiction over this case until such time as it can be determined whether the injunction described in a. and b. above will abate the private nuisance to the individual plaintiffs herein; if such injunction is not effective in abating the nuisance, then this court will

---

2. IDJI 490

*NUISANCE ISSUES*

The plaintiff has the burden of proving each of the following propositions:

1. That the plaintiff owns [an interest in] land [or the buildings (structures) on land]:

2. That the defendant has engaged in a course of conduct which

 a. ...
 b. is unreasonably injurious to the health; or
 c. is unreasonably offensive to the senses; or
 d. obstructs plaintiff's free use of his land [or buildings (structures)];

3. That, under all the circumstances, the defendant's course of conduct unreasonably interferes with the plaintiff's enjoyment of his property or with the enjoyment of his life while using the property;

4. The nature and extent of the damages and the amount thereof.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff; but, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant.

*Comments*

Only such of the subparagraphs of the second element of plaintiff's case as are at issue and supported by evidence should be given.

*See* Title 52, Idaho Code, and *McNichols v. J.R. Simplot Co.*, 74 Idaho 321, 262 P.2d 1012 (1953).

determine whether and under what conditions the Skaar feedlot should be permanently enjoined from all further operation at its present location.

Skaar filed a notice of appeal in December 1992. In May 1993, while this appeal was pending, Citizens moved for an injunction requesting that the court permanently enjoin "further operation of defendants' cattle feedlot at its present location," accompanied by supporting affidavits claiming that stench from the feedlot was as bad as ever. Skaar objected to any modification of the November 1992 injunction during the pendency of the appeal.

In a Memorandum Decision entered in July 1993, the district court concluded it had authority to modify the November 1992 injunction under I.R.C.P. 62(c). Rule 62(c) provides as follows:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction or writ of mandate, the court in its discretion may suspend, modify, restore, or grant an injunction or writ of mandate during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

In December 1993 the district court entered another Memorandum Decision denying Citizens' motion for a permanent injunction, but modifying the terms of the November 1992 injunction by imposing additional conditions on Skaar, such as removal of manure and existing pens from the feedlot.

In support of its argument that the district court lacked jurisdiction to modify the November 1992 injunction, Skaar cites *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982), for the proposition that Rule 62(c) is merely expressive of a power inherent in the court to "preserve the status quo" during the appeal.

■ In the circumstances of this case, we find no error in the district court's retention of jurisdiction, and its December 1993 order modifying the injunction. Despite a twelve day trial, the specific cause(s) of the noxious odors remained somewhat uncertain. The district court's November 1992 injunction ordered measures which were less burdensome to Skaar than a total closure. The district court had jurisdiction under Rule 62(c) to ensure that abatement would occur if the injunctive measures proved ineffective. After the initial measures failed, the district court had authority to employ other means to abate the nuisance. The appeal did not divest the district court of all jurisdiction to enforce its order. The court was not restricted to maintaining the "status quo" of an *un*abated nuisance. The district court's authority to expand the scope of injunctive relief is fairly encompassed within I.R.C.P. 62(c).

Our reasoning finds support in the decisions of several federal courts applying Federal Rule 62(c), the pertinent portion of which is identical to I.R.C.P. 62(c). In *Board of Education of St. Louis v. State of Missouri*, 936 F.2d 993 (8th Cir.1991), the district court determined that a secondary, vocational education system did not provide its students with a quality, integrated vocational education, and entered injunctive orders which the state appealed. While the appeal was pending the district court modified its injunctive orders because the desired results were not materializing. The defendant raised the same jurisdictional argument Skaar raises. The Eighth Circuit upheld the modifications declaring that the

> district court's 1991 order ... falls within an exception to the general rule of divestiture of district court jurisdiction. The district court retained jurisdiction to enter its 1991 order notwithstanding the pending appeal of the 1990 order. To conclude otherwise would only further delay achievement of the goal of providing a quality integrated vocational education system to St. Louis students.

*Id.* at 996 (*relying on Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir.1976)) affirmed in

part and reversed in part on other grounds, *Liddell v. Board of Education,* 988 F.2d 844 (8th Cir.1993); *see also Meinhold v. U.S. Dept. of Defense,* 34 F.3d 1469, 1480 n. 14 (9th Cir.1994) (appeal from injunctive order did not deprive district court of jurisdiction to broaden scope of injunctive relief, where court issued amended order to clarify original injunction and to supervise compliance).

Accordingly, we hold that the district court had jurisdiction to enter its December 1993 Memorandum Decision ordering further injunctive measures.

## V.

## MOTION FOR A JURY VIEW

■ Skaar also contests the district court's denial of its motion for a jury view of the feedlot. Rule 43(f) of the Idaho Rules of Civil Procedure provides that "during a trial, the court, *in its discretion,* may order that the court or jury shall have a view...." (emphasis added). The district court denied the motion, concluding that after twelve days of testimony and a review of various photographs and diagrams, a view of the feedlot would not assist the jury or the court in making its decision. Under the circumstances, we find no abuse of discretion by the district court, particularly since the jury's role was advisory only. Thus, we affirm the denial of Skaar's motion for a jury view.

## VI.

## CROSS–APPEAL

## DENIAL OF PERMANENT INJUNCTION

Citizens contend on cross-appeal that the district court erred when it stopped short of permanently enjoining the feedlot operation after finding that the nuisance had not been abated as of December 1993. In the December 1993 Memorandum Decision, the district court determined that the RTFA, I.C. § 22–4503, prevents permanently closing the feedlot, because no evidence exists that the feedlot constituted a private nuisance before the major changes in 1987 and 1988. Citizens again contend that the RTFA does not apply because the nuisance resulted from expansions and changes in Skaar's feeding practices, not from any change in the surrounding community. Citizens also contend that when a limited injunction fails to abate a nuisance, relocation is a proper remedy.

■ Entirely closing the feedlot would be a momentous invasion of Skaar's property rights. The district court has the latitude to seek a more equitable middle ground. This Court has stated:

> But in a case of conflicting rights, where neither party can enjoy his own [property] without in some measure restricting the liberty of the other in the use of property, the law must make the best arrangement it can between the contending parties, with a view to preserving to each one the largest measure of liberty possible under the circumstances.

*Koseris v. J.R. Simplot Co.,* 82 Idaho 263, 270, 352 P.2d 235, 239 (1960), (quoting *Madison v. Ducktown Sulphur, Copper & Iron Co.,* 113 Tenn. 331, 83 S.W. 658, 667 (1904)). Citizens have not shown on this record that only total closure or relocation will abate the nuisance. There may yet be other steps which will abate the nuisance. Significantly, the district court, in its December 1993 Memorandum Decision, also retained jurisdiction to issue further orders to abate the nuisance. For the reasons discussed above in part IV, this retention of jurisdiction was also proper. We have no record whether the actions required in the December 1993 Memorandum Decision have been effective. The district court was not required to permanently close the feedlot, and thus, we find no reversible error in the December 1993 Memorandum Decision.

## VI.

## CONCLUSION

The district court's Findings of Fact, Conclusions of Law and Judgment, entered No-

vember 12, 1992, and its Memorandum Decision and Order, entered December 8, 1993, are affirmed.

Costs on appeal to respondent, costs on cross-appeal to appellant. No attorney fees on appeal or cross-appeal.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and YOUNG, Justice Pro Tem concur.