16 P.3d 922

**William CREA and Virginia Crea, husband and wife, Plaintiffs–Respondents,**

v.

**Mike CREA and Lu Crea, husband and wife, Defendants–Appellants.**

No. 24793.

Supreme Court of Idaho, Lweiston, October 2000 Term.

Dec. 19, 2000.

Randall, Blake & Cox, Lewiston, for appellants. Scott M. Chapman argued.

Clark & Feeney, Lewiston, for respondents. Paul T. Clark argued.

WALTERS, Justice.

This is an appeal from a judgment enjoining the defendants, Mike and Lu Crea, from operating their hog-raising facility as a private nuisance. The judgment was entered after a trial before the district court. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The following is a summary of facts that were determined by the district court at trial. William and Virginia Crea reside on property in Idaho County that was homesteaded in 1879 by William's grandfather. In 1976, William and Virginia purchased 320 acres of the farm from William's parents, and in 1977 moved into a home constructed by the family in 1899. The home and its surroundings are well maintained. The grounds surrounding the house are attractively landscaped, providing the Creas with a pleasant atmosphere to entertain themselves and their guests.

In 1992, Mike and Lu Crea, William's nephew and niece, purchased an adjacent parcel of property from William's brother Lewis. At the time of Mike and Lu's purchase, Lewis Crea owned and operated a hog-raising facility. Mike and Lu took over Lewis' operation, expanding the facility and increasing the number of sows from approximately ninety-six to around 160.

Mike and Lu's hog-production facility is known as a "farrow-to-finish" operation. This essentially means that on a periodic basis some portion of Mike and Lu's sows used in production are impregnated and then housed in a gestation barn. The barn is located within twenty-five feet of William and Virginia's property line and approximately 650 feet from their home. The sows produce significant amounts of manure, which is scraped and stacked outside the barn prior to disposal.

The sows each produce litters of piglets. The sows and piglets are kept in a farrowing house. The piglets, once they are weaned, are then taken to a nursery. At that point, they are either sold or are "finished." Those piglets that are finished are transferred to a modified open-front building in order to gain the weight necessary to be sold at market. The sows return to be bred—thus beginning the process all over again. Each of the sows is somewhere along this process at any given time. A typical sow can produce at least two litters of piglets in a given year.

Mike and Lu's operation also contains three earthen impoundments [1] to store waste. These impoundments are, however, inadequate in terms of handling the waste produced by the hogs. One impoundment (impoundment A) was constructed at a size smaller than recommended by Gerald Bodman, the expert hired by Mike and Lu to advise them with regard to construction of the waste disposal facilities. Another, (impoundment B) which the district court described as "an open septic tank," lies just across William and Virginia Crea's property line and approximately 1,100 feet from their home. A third impoundment (impoundment C) is located west of impoundment B. The gestation barn, impoundments, and other fa-

1. According to the district court, a distinction between an earthen impoundment and a lagoon was drawn at trial by those knowledgeable in the field. This distinction is illustrated in an article by Professor Gerald Bodman, *Odor Potential: Storage v. Anaerobic Lagoon v. Facultative Lagoon* (University of Nebraska Cooperative Extension). In this article, Professor Bodman, who in part designed Mike and Lu Crea's waste management facilities and was an expert witness at trial, states that "[e]arthen storages work well for dairy and beef manure but are not suitable to swine or poultry manure." *Id.* at 1. In another article, Professor Bodman describes the three major types of lagoons as aerobic, anaerobic, and facultative. *See* Gerald Bodman, *Lagoons for Management of Livestock Manure: Planning, Construction, Operation* (University of Nebraska Cooperative Extension). An aerobic lagoon is typically shallow with a large surface area. It produces minimal odor. An anaerobic lagoon, on the other hand, is generally deep and has a small surface area. In his *Odor Potential* article, Professor Bodman notes that anaerobic lagoons, which he describes as open septic tanks, "will emit odors at unacceptably high rates at various times of the year." *Id.* at 2. A facultative lagoon is a hybrid system that incorporates features of both systems. During his testimony at trial, Professor Bodman described impoundment B as a "marginal" anaerobic lagoon. Because impoundments A and B are either smaller than recommended or "marginal," we, like the district court, will refer to them as "earthen impoundments" rather than "lagoons."

cilities near William and Virginia's home have allegedly resulted in frequent periods of offensive odor and profuse numbers of flies.

William and Virginia filed suit in 1997, seeking an injunction and damages. After a five-day trial the district court issued its decision on May 1, 1998, granting the injunction and awarding damages of $1,000 each to William and Virginia. The judgment was subsequently amended on May 7, 1998, and June 27, 1998. The amended judgment required Mike and Lu to: (1) discontinue their use of impoundment B; (2) construct at a new location further away from William and Virginia's residence a facultative lagoon with an increased storage capacity following a new design, with the new lagoon to contain waste currently deposited elsewhere—including the waste in impoundment C; (3) decrease the size of the permanent breeding herd (including sows and gilts[2]) back down to ninety-six or to relocate the herd to another site further away from William and Virginia's property; (4) dispose of any existing and future waste by incorporating the manure into fields or pasture, and if such incorporation is within a one-half mile radius of William and Virginia's residence, to immediately work the manure into the soil; (5) remove the waste currently in impoundment B and incorporate it into the soil; (6) refill and smooth over impoundment B with compacted soil.

## ISSUES

Mike and Lu present two issues on appeal. First, they challenge whether the district court erred by not considering the applicability of the Idaho Right to Farm Act to their hog operation. Second, they question whether the district court's finding that their hog facility constituted a private nuisance was based on substantial and competent evidence. William and Virginia request an award of attorney fees for responding to the appeal.

## DISCUSSION

### A. Applicability of the Idaho Right to Farm Act

Mike and Lu argue that the Idaho Right to Farm Act (RFTA or the Act), I.C. §§ 22–

4501 to 22–4504, protects their expanding agricultural operation from being declared a nuisance. This issue presents a question of law over which we exercise free review. *See, e.g., Ausman v. State,* 124 Idaho 839, 841, 864 P.2d 1126, 1128 (1993).

The RFTA seeks to shield certain agricultural operations from being declared a nuisance. *See Payne v. Skaar,* 127 Idaho 341, 344, 900 P.2d 1352, 1355 (1995). The Act, in pertinent part, provides that:

> [n]o agricultural operation or an appurtenance to it shall be or become a nuisance, private or public, by any changed conditions in or about the surrounding nonagricultural activities after the same has been in operation for more than one (1) year, when the operation was not a nuisance at the time the operation began; provided, that the provisions of this section shall not apply whenever a nuisance results from the improper or negligent operation of any agricultural operation or an appurtenance to it.

I.C. § 22–4503. In *Payne,* this Court concluded that the RTFA did not protect all existing agricultural operations from being declared a nuisance. *Id.* at 344, 900 P.2d at 1355. Noting the Act's intent to address the encroachment of "urbanizing areas," as well as changes in "surrounding nonagricultural activities," the Court found that the expansion of the defendant's feedlot, without a showing of either circumstance, resulted in a private nuisance. *Id.*

Mike and Lu argue that the decision in *Payne* is not applicable to the present case because of the addition of section 22–4502(2) to the Act in 1997. They assert that this amendment indicates the Idaho Legislature's intent that the Act apply to nonagricultural activity. Essentially, Mike and Lu contend that the Court's holding in *Payne* does not apply to their hog operation because their use of their property is residential, and residential use is embraced in the amended version of the statute.

However, reading the amended statute in context with the other sections of the RTFA

2. A gilt is a young sow. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 957 (1969).

demonstrates that the amendment does not alter the existing statutory scheme. Section 22–4502(2) defines "nonagricultural activities" to include "residential, commercial or industrial property development and use...." *Id.* Read in conjunction with Idaho Code section 22–4503, the amendment merely serves to clarify the types of activities that could result in the changed conditions necessary to exempt an agricultural operation from being deemed a nuisance. In other words, the "nonagricultural activity" producing the changed conditions in or around the existing agricultural operation could be found in the encroachment of residential, commercial, or industrial property or use. Accordingly, the decision in *Payne* remains in effect and is controlling in this case.

■ Similar to the situation in *Payne*, there is no dispute that the area surrounding the hog operation has remained substantially unchanged since Mike and Lu bought the facility in 1992. Likewise, the pleadings in the present case disclose that the hog operation is alleged to be a nuisance, not because of changes in surrounding non-agricultural uses, but because of an expansion of the operation itself. *See Payne*, 127 Idaho at 344, 900 P.2d at 1355; *Carpenter v. Double R Cattle Co.*, 105 Idaho 320, 332, 669 P.2d 643, 655 (Ct.App.1983), *rev'd on other grounds*, 108 Idaho 602, 701 P.2d 222 (1985). Thus, Mike and Lu are not protected under the RFTA. In addition, their argument also fails to take into account that their hog facility is more properly characterized as an "agricultural operation" as that term is defined in I.C. § 22–4502.[3] *See Carpenter*, 105 Idaho at 332, 669 P.2d at 655 (assuming, without deciding, that a cattle feedlot constitutes an agricultural operation). As such, any attempt to portray the hog farm as a "nonagricultural operation" strains the common meaning of the statute's language.

## B. Nuisance

### 1. Standard of Review

■ Appellate review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *See Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 812 P.2d 253 (1991). A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. *See Lindgren v. Martin*, 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997); *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *See* I.R.C.P. Rule 52(a); *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). We will not substitute our view of the facts for the view of the district court. *Marshall*, 130 Idaho at 679, 946 P.2d at 979; *Deer Creek, Inc. v. Hibbard*, 94 Idaho 533, 535, 493 P.2d 392, 394 (1972). Instead, where findings of fact are based on substantial evidence, even if the evidence is conflicting, those findings will not be overturned on appeal. *See Hunter v. Shields*, 131 Idaho 148, 953 P.2d 588 (1998). With this standard in mind, we turn to whether the district court erred in concluding that Mike and Lu's hog facility constituted a private nuisance.

### 2. Private Nuisance

■ Mike and Lu concede that the proper standard of review in this case is whether the trial court's nuisance determination is based on substantial and competent evidence. They then argue, however, that a nuisance finding should be based upon a totality of the circumstances test with an emphasis on what is reasonable under the circumstances. They assert that the district court should have considered other factors in determining whether their hog operation was a nuisance. Those factors include when the parties came to the property, what existed at the time they came to the property, and what the parties knew or should have known

---

3. Idaho Code section 22–4502(1) states that an agricultural operation includes "any facility for the growing, raising or production of ... livestock...." *Id.*

when they came to the property. *See McNichols v. J.R. Simplot Co.,* 74 Idaho 321, 324–25, 262 P.2d 1012, 1014 (1953). But by opting to argue that the district court failed to use proper factors in its determination, Mike and Lu neglect to actually challenge whether the evidence presented at trial supports the court's findings. Because Mike and Lu fail to argue that the district court's determination is not supported by substantial and competent evidence—which they openly acknowledge comprises the correct standard of review—the Court is not persuaded that the district court failed to apply the proper factors.

Indeed, an examination of the district court's findings of fact illustrates that the district court took into account several of the above factors in reaching its decision. The district court noted that this is not a case where overly sensitive urbanites move into an agricultural community. The court took into account: (1) when William and Virginia, who were both raised on farms, purchased their respective parcel, as opposed to Mike and Lu's more recent purchase; (2) the nature and extent of the hog operation at the time Mike and Lu purchased the facility as well as after its subsequent expansion; and (3) what Mike and Lu should have known at the time they came to the property—namely that a property owner may not, as the district court stated, "with impunity, do whatever one wants, including putting an open septic tank across the fence from your relatives."

Mike and Lu do, on the other hand, argue that a number of witnesses, as well as the district court during its inspection of the property, failed to detect an odor emanating from their hog operation. Idaho Code section 52–101 defines as nuisance as "anything which is injurious to health or morals, or is indecent, or offensive to the senses...." *Id.* However, given the abundant testimony in the record as to presence of offensive odors at William and Virginia's residence, as well as the copious number of flies, it is clear that the district court's nuisance determination is supported by substantial and competent evidence. Therefore, the Court affirms the district court's decision and judgment.

## C.  Attorney fees on appeal

The respondents, William and Virginia have requested an award of attorney fees under Idaho Appellate Rule 41. Attorney fees are proper in this circumstance only if the Court is left with the abiding belief that the appeal was brought frivolously, unreasonably, or without foundation. *See, e.g., Minich v. Gem State Dev., Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). While the Court does not agree with Mike and Lu Crea's argument that the Idaho Right to Farm Act applies in this case or that the district court's nuisance finding was not supported by substantial and competent evidence, we are not left with the abiding belief that the appeal was brought frivolously, unreasonably, or without foundation. Accordingly, the respondents' request is denied.

## CONCLUSION

For the above reasons, we affirm the district court's amended judgment in favor of William and Virginia. Costs, but not attorney fees, are awarded to William and Virginia pursuant to Idaho Appellate Rule 40.

Chief Justic TROUT and Justices SILAK, SCHROEDER and KIDWELL concur.

