The superior court's order finding the charges sufficient is reversed.

[No. 65298-8. En Banc.]
Argued October 21, 1997. Decided March 19, 1998.
CERTIFICATION FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF WASHINGTON
IN
RANDY BUCHANAN, ET AL., *Plaintiffs*, v. SIMPLOT FEEDERS
LTD. PARTNERSHIP, ET AL., *Defendants*.

674

*Bricklin & Gendler*, by *David S. Mann*, for plaintiffs.

*Meyer, Fluegge & Tenney*, by *Robert C. Tenney* and *Jerome R. Aiken*; and *Preston Gates & Ellis*, by *Marc C. Levy* and *Thomas H. Wolfendale*, for defendants.

DOLLIVER, J. — The certified question in this case stems from the Buchanans' federal lawsuit against Defendants Simplot Feeders Limited Partnership (Simplot) and IBP, Inc. (IBP). The lawsuit complains of manure dust, flies, and odors allegedly emanating from Defendants' feedlot and meat processing plant adjacent to the Buchanans' farm.

Our summary of the facts behind this lawsuit is based solely on the parties' motions and pleadings. The following summary should not be construed as an endorsement of any of the parties' factual claims. The Buchanans own and operate a 320-acre farm near Pasco, Washington. They have farmed and lived on the land since 1961. When they purchased the property, the adjacent properties were primarily used as rangeland. In approximately 1969, a small cattle-feeding operation opened on land to the southeast of the Buchanan farm. The Buchanans allege Simplot purchased the feedlot in fall 1992. The Simplot operation now allegedly covers over 580 acres of pens and holds over 40,000 cows. The Buchanans allege Simplot's operation of the lot since 1992 has resulted in a significant increase of flies, and foul and obnoxious odors.

The Buchanans allege a small meat processing plant began operation on property to the southeast of the Buchanan farm on or about 1970. They allege IBP purchased and has operated the facility since 1976. The Buchanans claim IBP has significantly expanded its meat processing and rendering plant since 1993, adding a new, large wastewater storage lagoon, a new, large storage pond for brine, and several new "cookers." The Buchanans allege this expansion has resulted in a significant increase in foul and obnoxious odors crossing onto the Buchanans' farm and residence.

The Buchanans sued Simplot and IBP in federal court, alleging nuisance, trespass and negligence. Under the trespass action, the Buchanans complained of flies and manure dust which were damaging the Buchanans' crops. Under the nuisance claim, they complained of the foul and obnoxious odors.

As to the nuisance claim, Simplot and IBP argued to the federal court that their operations were exempt from nuisance suits under RCW 7.48.305, a "right-to-farm" statute. RCW 7.48.305 declares certain agricultural activities do not constitute a nuisance under certain conditions.

The Buchanans disputed Defendants' reliance on RCW

7.48.305. They argued to the federal court that the statute cannot apply since the Buchanan farm allegedly was in operation *before* Defendants' activities. The Buchanans then argued that, even if Defendants could rely upon RCW 7.48.305, the Buchanans could still seek damages in their nuisance action pursuant to a 1992 amendment to the statute. The Buchanans claim the 1992 amendment to RCW 7.48.305 changed the whole statute so as to prohibit just those nuisance actions where injunctive relief is sought.

The federal court issued an order partially granting Defendants' motions for summary judgment. The court dismissed some of the Buchanans' negligence and trespass claims, but it withheld ruling on the nuisance claim, finding there was "a question of interpretation of chapter 7.48 RCW on which there are no relevant Washington authorities." Pet. to Determine Certified Question of Law and Certified R. at 2. The federal court certified the following question:

> **Does the 1992 amendment to RCW § 7.48.305 which added the passage "Nothing in this section shall affect or impair any right to sue for damages" limit application of the balance of the section to actions seeking extraordinary relief?**

*Id.*

During the 1970s and early 1980s, every state except South Dakota enacted what are generally referred to as right-to-farm statutes. Neil D. Hamilton & David Bolte, *Nuisance Law and Livestock Production in the United States: A Fifty-State Analysis*, 10 J. AGRIC. TAX'N & L. 99, 101 (1988). Right-to-farm statutes were created to address a growing concern that too much farmland was being overtaken by urban sprawl. Margaret Rosso Grossman & Thomas G. Fischer, *Protecting the Right to Farm: Statutory Limits on Nuisance Actions Against the Farmer*, WIS. L. REV. 95, 97 (1983) (hereinafter Grossman & Fischer). As more urban dwellers moved into agricultural areas, nuisance lawsuits by those urbanites threatened the existence of many farms. Nuisance suits frustrated farming

operations and encouraged farmers to sell to developers, continuing the cycle. *Id.*

Most of the right-to-farm statutes adopted across the country codified the common-law defense of "coming to the nuisance." Grossman & Fischer at 118. Plaintiffs who purchase or improve property, after the establishment of a local nuisance activity, have "come to the nuisance." While this fact did not absolutely bar the plaintiff's nuisance action, it was one factor to be considered in whether to grant the plaintiff relief. RESTATEMENT (SECOND) OF TORTS § 840D (1977).

The Washington State Legislature embraced the right-to-farm issue in 1979, when it passed an act entitled "Agricultural Activities—Protection from Nuisance Lawsuits." LAWS OF 1979, ch. 122 (codified at RCW 7.48.300-.310 & .905). We will refer to this legislation as the Right-to-Farm Act, or the Act. The Legislature attempted to amend RCW 7.48.305 in 1991, but the Governor vetoed the legislation. *See* LAWS OF 1991, ch. 317, § 1 (vetoed by the Governor); *see also* Governor's Veto Letter, *reprinted in* 2 HOUSE JOURNAL, 52D LEG., 1st Spec. Sess. 3944-45 (1991). In 1992 the Legislature passed nearly the same amendments to RCW 7.48.305. This time, the law was signed by the Governor and enacted. LAWS OF 1992, ch. 151, § 1. Part of the new law added the following sentence to RCW 7.48.305: "Nothing in this section shall affect or impair any right to sue for damages." LAWS OF 1992, ch. 151, § 1 (underlining omitted). The certified question from the federal court questions the effect of this damages sentence on the remainder of the statute.

Before we address the certified question, we must comment on the distinct, yet related, question of whether Defendants may properly rely on the Right-to-Farm Act in defense of this nuisance action. The Buchanans argued to the federal court that the nuisance exemption cannot be raised as a defense by Defendants:

> The Right to Farm Act was intended to protect existing farms from the pressures associated with urbanization. Urbanization is not at issue in this case. Instead, it is the Buchanan family

farm that is being forced out by the expanding cattle feedlot and industrial-like beef processing facility. The Right to Farm Act neither expressly nor impliedly applies to this situation.

Pls.' Resp. to Defs.' Mot. for Summ. J. at 4. The Buchanans further argued RCW 7.48.305 applies only to the following situation:

> [I]f a farm or agricultural activity pre-exists at a particular location and then a non-farm activity, such as a residential community, moves into the area, the non-farm activity is precluded from bringing an action for nuisance against the pre-existing farm.

Pls.' Resp. at 6. Since the Buchanan farm allegedly does not constitute "encroaching urbanization," and since the Buchanans' farm was allegedly in operation before Defendants' activities giving rise to the nuisance, the Buchanans argued the Defendants should not be able to raise RCW 7.48.305 as a defense.

In their memoranda submitted to the federal court, Simplot and IBP argued they can rely on RCW 7.48.305. They claimed the only time a farm is *not* exempt from a nuisance suit under the statute is if the farm locates in preexisting urban areas. Simplot and IBP assert their activities were established before any surrounding nonagricultural activities, allowing them to rely on RCW 7.48.305 as a defense. The record shows no indication of any nonagricultural activities existing in the area.

█ The certified question does not raise the issue of whether Defendants may rely on the Right-to-Farm Act, and we observe that the federal court has yet to rule on the question. We also note there is no case law clarifying the issue of who exactly may raise the Right-to-Farm Act as a defense. Given the lack of authority on the issue, we feel compelled to discuss the scope of RCW 7.48.305. While the issue is not directly before this court, we feel the following analysis will be helpful to the federal court's pending resolution of the matter.

█ As written, RCW 7.48.305 is not very structured. The statute provides:

Notwithstanding any other provision of this chapter, agricultural activities conducted on farmland and forest practices, if consistent with good agricultural and forest practices and established prior to surrounding nonagricultural and nonforestry activities, are presumed to be reasonable and shall not be found to constitute a nuisance unless the activity has a substantial adverse effect on the public health and safety.

If those agricultural activities and forest practices are undertaken in conformity with all applicable laws and rules, the activities are presumed to be good agricultural and forest practices not adversely affecting the public health and safety for purposes of this section and RCW 7.48.300. An agricultural activity that is in conformity with such laws and rules shall not be restricted as to the hours of the day or day or days of the week during which it may be conducted.

Nothing in this section shall affect or impair any right to sue for damages.

Three conditions can be derived from this statute. An agricultural activity is presumed to be reasonable and shall not constitute a nuisance when: (1) the activity does not have a substantial adverse effect on public health and safety; (2) the activity is consistent with good agricultural practices, laws, and rules; and (3) the activity was established prior to surrounding nonagricultural activities. The Legislature itself has read RCW 7.48.305 in a similar way. *See* 1991 FINAL LEGISLATIVE REPORT, 52D LEG. 133 (describing the Right-to-Farm Act as allowing nuisance immunity when those three circumstances are present).

 The third condition requires the challenged agricultural activity to have been established prior to surrounding nonagricultural activities before the nuisance exemption applies. This condition also suggests an established farm may not be able to institute a new or radically expanded "activity" and maintain nuisance immunity, because the language of the statute focuses on agricultural *activity* that has been established prior to the urban encroachment. *Cf. Payne v. Skaar*, 127 Idaho 341, 900 P.2d 1352, 1355 (1995) (Idaho Right-to-Farm Act does not

protect an established feedlot from nuisance suits if the nuisance arises because of expansion of the agricultural activity). This third condition presents an ambiguity within the structure of RCW 7.48.305: One would assume the statute's nuisance exemption is limited to situations where the nuisance suit arises *because of* the subsequent surrounding nonagricultural activities, since the Legislature expressly states the statute is designed to protect farms *"in urbanizing areas"* from nuisance suits. RCW 7.48.300 (emphasis added). The language of the statute, however, does not explicitly make this connection between the nuisance suit and the urbanization.

Since the statute contains an ambiguity, this court must look to legislative intent when applying the statute. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995) (*Sehome Park*). When analyzing the ambiguous language in RCW 7.48.305 along with the Legislature's finding and purpose in RCW 7.48.300, it becomes clear the nuisance immunity should be allowed just in those cases where the nuisance suit arises because of urban encroachment into an established agricultural area.

Our ability to interpret and apply the Right-to-Farm Act is enhanced by the Legislature's express statement of findings and purpose. *See* RCW 7.48.300. The first sentence of the statute clearly connects the design of the Act to protecting farms in urbanizing areas:

> The legislature finds that agricultural activities conducted on farmland and forest practices in urbanizing areas are often subjected to nuisance lawsuits, and that such suits encourage and even force the premature removal of the lands from agricultural uses and timber production.

RCW 7.48.300. The second sentence of the statute, however, offers a more sweeping statement:

> It is therefore the purpose of RCW 7.48.300 through 7.48.310 and 7.48.905 to provide that agricultural activities conducted on farmland and forest practices be protected from nuisance lawsuits.

RCW 7.48.300. This second sentence broadly offers nuisance protection for all agricultural activities. In their arguments to the federal court, Defendants focused on this second sentence.

When determining the legislative intent of the nuisance exemption, we cannot blindly focus on the second sentence —we must read it in context with the first sentence. "In ascertaining intent, we must look to the whole statute, rather than the single phrase at issue." *Sehome Park*, 127 Wn.2d at 778. The Legislature is concerned farmlands *in urbanizing areas* are prematurely being closed to agricultural use because of nuisance lawsuits *in those urbanizing areas*. This first sentence expresses the specific problem the Legislature intended to address. We read the second sentence in a narrow sense as responding to the specific problem of farming operations being threatened by urbanization.

The Legislature's stated purpose of the Right-to-Farm Act supports a narrow interpretation of RCW 7.48.305. A narrow reading is also supported by the legislative history of the statute, which is an important tool to ascertain intent. *Sehome Park*, 127 Wn.2d at 778. The Senate floor debate concerning passage of the Right-to-Farm Act clearly shows RCW 7.48.305 was intended to protect farms *in urbanizing areas* from nuisance suits.

Senator Rasmussen, who was the only senator to vote against passage of the law, posed several hypothetical situations in the attempt to criticize the bill. In defense of the bill, Senator Gaspard stated:

> "We are really trying to state a policy that farm lands are disappearing from this Puget Sound region and those farm lands that have been established *before urban areas and suburban areas have surrounded them* are having a very difficult time staying where they are. I think that it is more a statement of policy by the state than anything else."

1 SENATE JOURNAL, 46TH LEG., Reg. Sess. 514 (1979) (emphasis added). Senator Bottiger also stated:

"An answer that Senator Gaspard didn't give, and that I think turns the case against Senator Rasmussen, is the question *who was there first*. If the dog kennel was there first and you chose to come with your subdivision and build all around it, then you bought with the dog kennel next door to you and you can't bring a nuisance action to get rid of them. . . ."

*Id.* at 515 (emphasis added). Senator Bottiger's statement supports finding Washington's Right-to-Farm Act codifies the coming to the nuisance defense, and it justifies a narrow application of the nuisance exemption. *See also* Grossman & Fischer at 118 ("These [right-to-farm] statutes are directed at nuisance suits brought by the newcomer nonagricultural plaintiff against a preexisting agricultural operation . . . .").

The express legislative purpose and the legislative history behind the Right-to-Farm Act support this court's reading the phrase "established prior to surrounding nonagricultural . . . activities" as including the premise that the only nuisance suits barred by RCW 7.48.305 are those which arise because of subsequent nonagricultural development and which are filed by one of those nonagricultural activities referenced in the language of the statute. This narrow reading of the ambiguous condition serves the narrowly tailored legislative intent of protecting farms "in urbanizing areas" from nuisance lawsuits which arise because of the encroaching urbanization.

Additionally, we find public policy considerations urge a narrow application of the Act. The protection afforded by the nuisance exemption is similar to a prescriptive easement. When a farm establishes a particular activity which potentially interferes with the use and enjoyment of adjoining land, and urban developments subsequently locate next to the farm, those developers presumably have notice of those "farm" activities. The Right-to-Farm Act gives the farm a quasi-easement against the urban developments to continue those nuisance activities.

A farm obtains this quasi-easement much more easily under the Act than if the farm were required to meet the

strict requirements for a prescriptive easement. *See Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 694, 709 P.2d 782 (1985) (prescriptive easement claimant must show (1) open, notorious, uninterrupted use for 10 years which is (2) adverse to the title owner, and (3) the owner was aware of the adverse use and had the opportunity to enforce the owner's rights). The Right-to-Farm Act does not even set a minimum time period for which a farm activity must be established in order to be exempt from nuisance suits. *Compare Payne v. Skaar*, 127 Idaho 341, 900 P.2d 1352, 1355 (1995) (Idaho Right-to-Farm Act requires the agricultural activity to be "in operation for more than one (1) year" before nuisance exemption applies); *see also* Neil D. Hamilton & David Bolte, *Nuisance Law and Livestock Production in the United States: A Fifty-State Analysis*, 10 J. AGRIC. TAX'N & L. 99, 101 (1988) (most right-to-farm statutes require the challenged agricultural activity predates changes in the neighborhood by at least one year). Just as prescriptive rights are difficult to obtain, and are not favored in law, *Pedersen v. Department of Transp.*, 43 Wn. App. 413, 417, 717 P.2d 773 (1986), we hold the nuisance protection afforded by the Right-to-Farm Act must be applied cautiously and narrowly. RCW 7.48.305 should not be read to insulate agricultural enterprises from nuisance actions brought by an agricultural or other rural plaintiff, especially if the plaintiff occupied the land before the nuisance activity was established. *See* Neil D. Hamilton, *Right-To-Farm Laws Revisited: Judicial Consideration of Agricultural Nuisance Protections*, 14 J. AGRIC. TAX'N & L. 195, 217 (1992) ("[A] right-to-farm law does not give farmers the power to inflict any hardship on neighbors just because an agricultural facility is involved, especially when the neighbors are there first.").

We have commented on the issue of who may raise RCW 7.48.305 as a defense only because we find no case law clarifying the ambiguous statute. We are unprepared to rule on the merits of Defendants' reliance on the statute in this case, nor does the certified question ask for such a ruling. Our analysis is solely intended to aid the federal court

in deciding the question when the federal proceedings resume.

We now turn to the question of whether the 1992 amendment to RCW 7.48.305 allows the Buchanans to seek damages in this nuisance action. As originally enacted in 1979, the Right-to-Farm Act plainly stated agricultural activities which met the three listed conditions "do not constitute a nuisance." Laws of 1979, ch. 122, § 2. This left little room for a plaintiff to pursue a nuisance claim. If the approved agricultural activity, by statutory proclamation, did not constitute a nuisance, there would be no legal basis for seeking either injunctions or damages under a nuisance theory. In 1992 the Legislature amended RCW 7.48.305 by adding the following damages sentence: "Nothing in this section shall affect or impair any right to sue for damages." RCW 7.48.305 (as amended by Laws of 1992, ch. 151, § 1).

Defendants interpret the damages sentence as referring to a plaintiff's ability to seek damages under related causes of action, such as trespass. Defendants claim the Right-to-Farm Act, as a whole, was designed to protect farms in urbanizing areas from nuisance *lawsuits*. *See* RCW 7.48.300 (purpose of the Act is to provide that farms in urbanizing areas "be protected from nuisance lawsuits"). The Act expressly declares agricultural activities which meet the three conditions *"shall not be found to constitute a nuisance."* RCW 7.48.305 (emphasis added). Defendants argue:

> The Act does not bar or even address any particular remedies for a nuisance claim; rather, the Act bars the claim itself. If the claim is barred, it necessarily follows that no remedies are available, whether legal or equitable.

Br. of Defs. Simplot Feeders Limited Partnership and IBP, Inc. at 10. Since the first two paragraphs of the statute bar the nuisance claim itself, the damages sentence must refer to damages in other causes of action. The Buchanans' bifurcated causes of action aptly illustrate Defendants' in-

terpretation of the damages sentence: While the Right-to-Farm Act allegedly prevents the Buchanans' nuisance action, it does not preclude the Buchanans from seeking damages under their separate trespass claim.

The Buchanans completely disagree with Defendants' interpretation of RCW 7.48.305. They argue the damages sentence is clear and unambiguous, and must be applied to allow their claim for damages:

> The first two paragraphs of RCW 7.48.305 create an exemption from nuisance actions for certain agricultural activities. The third paragraph, however, limits that exemption by expressly preserving actions for damages.

Br. of Pls. Randy Buchanan, Wayne Buchanan, and Donna Buchanan at 6. They argue the language must be harmonized with the rest of the statute in a way so as not to render the damages language meaningless. The only way to give the damages sentence meaning, they claim, is to allow recovery of damages in nuisance actions. This reading of the damages sentence essentially changes the nature of RCW 7.48.305 by reducing the remainder of the statute to a prohibition against injunctive relief.

Under the Buchanans' reading of the RCW 7.48.305, a housing development could locate next to a farm and sue for damages arising from the odors emanating from the farm's use of manure as fertilizer. RCW 7.48.305 would prevent the plaintiffs from enjoining the farm's activities; but, as the Buchanans construe the 1992 amendment, the plaintiffs could recover full damages for the loss of enjoyment of their properties caused by the odors. This scenario is not unheard of in pre-Right-to-Farm Act cases—numerous decisions fashioned such equitable relief when the court felt it would be too burdensome to enjoin the complained of activity. *See, e.g., Jones v. Rumford*, 64 Wn.2d 559, 560, 392 P.2d 808 (1964) (affirming judgment where the trial court had awarded $500 to plaintiff for nuisance damages caused by odors from chicken breeding plant, but had refused to enjoin the defendants' operation).

 Despite finding some support in common law for their position, we cannot accept the Buchanans' interpretation of the damages sentence in RCW 7.48.305. First, as observed by Defendants, the first two paragraphs of RCW 7.48.305 do not discuss remedies; rather, they state agricultural activities which meet certain conditions "shall not constitute a nuisance." We cannot ignore this statutory directive. If an agricultural activity meets the statutory conditions, and does not constitute a nuisance, then a nuisance action cannot survive whether the remedy sought is an injunction or damages.

Furthermore, to read the damages sentence in accordance with the Buchanans' interpretation would fully gut the entire Right-to-Farm Act. The Act was designed to protect farmland from eradication in urbanizing areas. If urban developers could invade an agricultural area and recover *damages* for nuisances arising from the normal operation of the farms, those farms would be forced out of operation nearly as quickly as if the farms were legally enjoined from conducting those activities. Few farms could afford the cost of defending against nuisance actions seeking damages every two years. *Cf. Riblet v. Ideal Cement Co.*, 54 Wn.2d 779, 781, 345 P.2d 173 (1959) (plaintiffs' nuisance suit against cement company was limited by two-year statute of limitation, so plaintiffs brought new actions biennially). If a jury's damages award were large enough, a farm could easily be forced out of business and into bankruptcy. Had the Legislature intended to revamp the entire Right-to-Farm Act by simply adding the damages sentence, as claimed by the Buchanans, it should have changed the first two paragraphs of RCW 7.48.305, and altered RCW 7.48.300, to reflect such a substantial revision of the Act.

In the past, when the Legislature made a substantive change to the Right-to-Farm Act, it accordingly altered the express legislative purpose of the Act to reflect the change. When the Legislature added forestry practices to the scope of the Act, not only did it change RCW 7.48.305, it also amended RCW 7.48.300 to reflect the change. *See* LAWS OF

1992, ch. 52, §§ 2, 3. When the Legislature added the damages sentence, however, it did not feel it was necessary to alter the statement in RCW 7.48.300, "It is therefore the purpose of [this Act] to provide that agricultural activities . . . *be protected from nuisance* lawsuits." RCW 7.48.300 (emphasis added). We will not read the language in the damages sentence in a way so as to contradict the express legislative purpose of the Act.

The legislative history behind the damages sentence demonstrates the Legislature did not feel the language operated to change the scope of the Right-to-Farm Act. Since the 1992 amendment used the identical damages sentence as was considered in 1991, the 1991 legislative history informs our analysis of the 1992 amendment. When the House considered amending RCW 7.48.305 in 1991, the original bill did not contain the damages sentence. *See* H.B. 1954, 52d Leg., Reg. Sess. (1991). The sentence was first introduced in a substitute bill (Substitute H.B. 1954), which was considered and recommended by a legislative committee. *See* House Comm. on Agric. & Rural Dev., 52d Leg., House Bill Report on H.B. 1954 (Feb. 28, 1991). In the bill report, the committee compared the substitute bill, with the added damages sentence, to the original bill:

> **Substitute Bill Compared to Original Bill:** The substitute bill expressly states that the exemption from nuisance law provided to certain agricultural activities does not impair a right to sue for damages.

House Bill Report on H.B. 1954, at 2. The phrasing of this description implies that the damages language merely makes explicit ("expressly states") what was otherwise implicit in the preexisting state of the law: The Right-to-Farm Act prohibits nuisance suits but does not preclude one from seeking damages in other causes of action.

Interpreting the damages clause as referring to other causes of action does not render the amendment superfluous or meaningless. While the Right-to-Farm Act solely concerns nuisances, there is a fine, and sometimes indistin-

guishable, line between nuisance and trespass. *See Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 684, 709 P.2d 782 (1985). The subtlety of the distinction is demonstrated by *City of Benton City v. Adrian*, 50 Wn. App. 330, 748 P.2d 679 (1988), the one reported case which has dealt with the Right-to-Farm Act.

In *Benton City*, the defendant farmers were sued when irrigation runoff from the farms damaged recent urban developments on nearby properties. The runoff fouled a well serving a private residence. *Benton City*, 50 Wn. App. at 333. It threatened to pollute the city's well. *Id.* It washed away soil along a city ditch, exposing the city's sanitary water line. *Id.* It also cut away the banks of Kiona Irrigation District's water canal, allowing large quantities of silt and sand to enter into the canal. The Irrigation District and the City sued the farmers, seeking an injunction and damages. The farmers raised RCW 7.48.305 as a defense, but the court disagreed:

> The history of [RCW 7.48.305] does not indicate the Legislature had in mind the kind of off-site trespass involved in this case. *See* Senate Journal, 46th Legislature (1979), at 514-15. The statute concerns "activities conducted *on* farmland" being presumed reasonable and not a nuisance if "consistent with good agricultural practices". (Italics ours.) However, assuming rill irrigation is reasonable, flooding adjoining property is not what was intended by this nuisance exemption. Sounds, smells, dust, etc., which might interfere with *use and enjoyment* of life and property were mentioned in the legislative history; interference with *possession* of property, by actual destruction through escaping water, was not, and is categorically different.

*Benton City*, 50 Wn. App. at 334. The appellate court ruled that both an injunction and damages were appropriate. *Benton City*, 50 Wn. App. at 342.

As demonstrated by the appellate opinion, the *Benton City* court had problems when attempting to maintain the distinction between nuisance and trespass. Even though the court initially called the seeping irrigation

water a physical trespass, so as to avoid application of the right-to-farm statute, the court later characterized the problem as a nuisance: "We believe the correct rule is that in a case of damage due to flooding *involving a nuisance*, liability *may* be several." *Benton City*, 50 Wn. App. at 342 (first emphasis added) (footnote omitted). While *Benton City* demonstrates the difficulty of maintaining a distinction between nuisance and trespass, it is likely the Legislature added the damages sentence to endorse *Benton City*'s approach to the problem: If an agricultural activity interferes with the use and enjoyment of adjoining property, it is properly characterized as a nuisance and the activity may be protected under the Right-to-Farm Act. If, on the other hand, the agricultural activity interferes with neighbors' actual possession of their property, and if the activity physically damages the property, then the action qualifies as a trespass and damages may be recovered. *See also Bradley*, 104 Wn.2d at 691 (trespass action requires a showing of a foreseeable, intentional act which invades an owner's exclusive possession of property, and causes substantial damage to the property).

In conclusion, we agree with Defendants' reading of the damages sentence in RCW 7.48.305. We hold the language merely refers to a plaintiff's ability to seek damages in other causes of action, such as trespass. Assuming Defendants can rely on the Right-to-Farm Act as a defense, the 1992 amendment does not allow the Buchanans to seek nuisance damages for the foul odors allegedly emanating from Defendants' properties.

DURHAM, C.J., and SMITH, GUY, TALMADGE, and SANDERS, JJ., concur.

MADSEN, J., concurs in the result only.

ALEXANDER, J. (dissenting) — While I do not necessarily disagree with the majority when it expresses the view that the defendants should not be permitted to rely on the

Right-to-Farm Act in defense of the nuisance action that the Buchanans maintained in federal court against Simplot and IBP, Inc., I feel compelled to point out that the federal court did not ask us whether or not the nuisance exemption may be raised by the defendants. While it is often tempting to answer questions of law that are not put to us, we should avoid answering questions of state law not certified to us by a federal court. *See* RCW 2.60.020; RAP 16.16; *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 77, 821 P.2d 18 (1991); *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 852 n.3, 774 P.2d 1199, 779 P.2d 697 (1989) ("we decline to consider the matter, as it falls outside the scope of the federal district court's order of certification").

The only question we should answer is the one directed to us by the federal court. It is as follows:

Does the 1992 amendment to RCW § 7.48.305 which added the passage "Nothing in this section shall affect or impair any right to sue for damages" limit application of the balance of the section to actions seeking extraordinary relief?

Pet. to Determine Certified Question of Law and Certified R. at 2.

The majority answers the certified question "no." I disagree with this answer because the plain language of the statute simply does not support such an answer. I reach that conclusion because the above-quoted damages sentence, which was added to RCW 7.48.305 in 1992, clearly and unambiguously allows the plaintiffs' claim for damages. I am persuaded that while the first two paragraphs of RCW 7.48.305 create an exemption from nuisance actions for certain agricultural activities, the third paragraph limits that exemption by preserving actions for damages for nuisance. In short, the majority's conclusion that the damages sentence should be read as referring to only the plaintiffs' ability to seek damages in other causes of action, such as trespass, is not borne out by the plain language of the statute. While such an interpretation apparently accords with the majority's view of the underlying purpose of

the Right-to-Farm Act, we are not to apply rules of construction to create an ambiguity where none exists or to discern a meaning that is contrary to the plain meaning of the words of the statute. *See Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

JOHNSON, J., concurs with ALEXANDER, J.