86 P.3d 784 (2004)
ALPENTAL COMMUNITY CLUB, INC., a Washington nonprofit corporation; Robert Kevin Johnson and Pamela Jean Ferguson, husband and wife, Respondents,
v.
SEATTLE GYMNASTICS SOCIETY, a Washington corporation; Sahalie Ski Club, Inc., a Washington corporation; S.F. Hill Lumber Co., Inc., a Washington corporation; and Portac, Inc., a Washington corporation, Appellants.
No. 49850-9-I.
Court of Appeals of Washington, Division 1.
January 20, 2004.
Publication Ordered March 22, 2004.
*785 Joseph P. Lawrence, Lawrence and Versnel PLLC, Seattle, for Portac, Appellant.
Eric Louis Freise, Jill Renee Skinner, Attorney at Law, Seattle, for S.F. Hill Lumber Co., Appellant.
John Robert McDowall, Carney Badley Spellman, Seattle, WA, for Sahalie Ski Club & Seattle Gymnastics, Appellants.
Frank Raymond Siderius, Siderius Longeran & Martin LLP, Seattle, WA, for Alpental Community Club, Pamela Jean Ferguson and Robert Kevin Johnson, Respondents.
Ann Forest Burns, Bruce Henry Williams, Seattle, WA, for Washington Farm Forest, Petitioner.
COX, A.C.J.
The Right-to-Farm Act bars nuisance actions against those engaged in "forest practices" where such practices were established prior to surrounding nonforestry activities.[1] The bar is subject to the further condition that the activity not have a substantial adverse effect on the public health and safety.[2] The trial court made no express determination that the activities here had such a substantial adverse impact on the public health and safety. And the growing of timber on the property of Seattle Gymnastics Society (SGS) antedated the establishment of the nonforestry activities of Alpental Community Club (ACC). Accordingly, the statute bars this action. We reverse.
Appellant Seattle Gymnastics Society (SGS) owns property near Alpental ski area. SGS and its predecessors have owned the property since the early 20th century. That part of the property that is the subject of this action is zoned as forest land. There is no access to or recreational activity on this property because it is forest land engaged in growing trees. SGS harvested timber from a slope on the property in the 1970s and, most recently, in 1995.
The Alpental Community Club (ACC) owns property adjacent to the slope that is part of the SGS property, and ACC members own two cabins adjacent to that slope. A road named Ober Strasse runs along the slope and in front of the two cabins. ACC maintains this road.
In 1997, avalanches from the slope caused damage to the cabins and encroached onto the road. The cabin owners sued SGS. Pursuant to a settlement, SGS constructed several avalanche fences on the slope side of the cabins, replanted trees on the slope, and established a fund for snow removal from Ober Strasse in the event that an avalanche occurred in the future.
After the settlement, ACC commenced this action for nuisance, negligence, and trespass. The trial court entered a finding of fact that included the statement that there was "no established pre-existing forest practice on the SGS property." The court also determined that neither SGS's ownership of the forest land nor the logging was a "forest *786 practice" under RCW 76.09 and that SGS was not immune from liability for nuisance under RCW 7.48. The trial court also determined that the logging created a nuisance.
The trial court entered a Judgment and Decree for Nuisance Abatement that directs a number of remedial measures that SGS shall take.
SGS appeals.

IMMUNITY UNDER THE RIGHT-TO-FARM ACT
Initially, we must address ACC's argument that SGS failed to individually assign error to any Findings of Fact or Conclusions of Law or reference any finding by number, and that the findings must therefore be considered verities on appeal.[3] "[T]he appellate court may excuse a party's failure to assign error where the briefing makes the nature of the challenge clear and the challenged finding is argued in the text of the brief."[4] SGS specifically references finding number 14 in their argument, and the argument makes clear that they dispute the trial court's finding that there was no pre-existing forest practice. SGS has adequately raised the issue, and we will consider it.
SGS argues that they are immune from an action for nuisance under the Right-to-Farm Act. We agree.
RCW 7.48.305, known as the Right-to-Farm Act, states that
Notwithstanding any other provision of this chapter, ... forest practices, if consistent with good ... forest practices and established prior to surrounding ... nonforestry activities, are presumed to be reasonable and shall not be found to constitute a nuisance unless the activity has a substantial adverse effect on the public health and safety.

If those ... forest practices are undertaken in conformity with all applicable laws and rules, the activities are presumed to be good ... forest practices not adversely affecting the public health and safety for purposes of this section and RCW 7.48.300.[[5]]
Richard Poelker, a member of SGS, testified that SGS had owned the property, which totals approximately 80 acres, since about 1918. He stated that there was no access to the 40 acres comprising the property at issue, and that SGS did not engage in recreational activity on that property because it was forest land and was growing trees.
The parties differ as to whether the growing of trees on the SGS property before ACC purchased its land constitutes a forest practice. Those differences are resolved by examining RCW 76.09.020(10), which defines "forest practice" as follows:
"Forest practice" means any activity conducted on or directly pertaining to forest land and relating to growing, harvesting, or processing timber, including but not limited to:
(a) Road and trail construction;
(b) Harvesting, final and intermediate;
(c) Precommercial thinning;
(d) Reforestation;
(e) Fertilization;
(f) Prevention and suppression of diseases and insects;
(g) Salvage of trees; and
(h) Brush control.
"Forest practice" shall not include preparatory work such as tree marking, surveying and road flagging, and removal or harvesting of incidental vegetation from forest lands such as berries, ferns, greenery, mistletoe, herbs, mushrooms, and other products which cannot normally be expected to result in damage to forest soils, timber, or public resources.[[6]]
In Buchanan v. Simplot Feeders, Inc., which involved the agricultural aspect of the statute, our supreme court noted that an activity does "not constitute a nuisance when (1) the activity does not have a substantial adverse effect on public health and safety; *787 (2) the activity is consistent with good agricultural practices, laws, and rules; and (3) the activity was established prior to surrounding nonagricultural activities."[7] The court also stated that the purpose of RCW 7.48.300 is to protect agricultural activities and forest practices from lawsuits resulting from "urban encroachment into an established agricultural [or forest] area."[8]
The trial court in this case entered finding of fact number 14, stating that
There is no evidence of logging activity on the SGS property prior to establishment of the ACC plat in 1967, no apparent notice to the ACC that the property was held for logging purposes, and no established pre-existing forest practice on the SGS property. The ACC would have assumed the property was held for recreational purposes.
Although the trial court denominated it as a finding of fact, this finding included the legal conclusion that there was no pre-existing forest practice on the property. The court on appeal treats conclusions of law labeled as findings of fact as conclusions of law[9] and reviews them de novo.[10]
The term "forest practices" is not limited to logging activity. Careful examination of the statute shows that a wide variety of activities may constitute such practices, including the nonexclusive list specified in the statute. There can be no doubt that in the instant case, SGS grew trees on the subject property for a number of years before ACC came on the scene. It is also clear that the growing of trees is not within the exclusions listed in the statute. We must conclude from the broad language of this statute that the growing of trees is a forest practice.
In Department of Natural Resources v. Marr,[11] appellant argued that land was not "forest land" because he was not actively growing timber on it. This court concluded that, under the statutory definition of "forest land", "there is no requirement that landowners be actively engaged in cultivating timber."[12] Similarly, the statute defining "forest practices" includes as a forest practice any activity "related to growing, harvesting, or processing timber." The actual growing of timber, while it involves no physically observable activity, must be included among the activities that pertain to the growing of timber.
If we were to determine that growing timber does not constitute a forest practice, that would be akin to concluding that growing wheat or corn is not an agricultural practice because no physically observable activity is occurring while either crop grows. While timber requires decades to grow, the growing process must occur before timber is merchantable and ready to cut. And the statute is designed to protect forestry areas from activity such as constructing a residential development and then bringing an action for nuisance because the forest land owner carries on with forestry. In addition, the SGS property was zoned as forest land and SGS was not using it for a purpose that interfered with its use as forest land or with the logging that occurred in the 1970s or in 1995.
Significantly, the trial court did not make an express determination that SGS's activities had "a substantial adverse effect on the public health and safety."[13] Under the terms of the Right-to-Farm statute, this is the only condition that overcomes the statutory presumption that immunity applies in this situation. Accordingly, the statute acts as a bar to the action in this case.
We conclude that the trial court's focus on logging as opposed to other forest practicesgrowing of timberled to the erroneous *788 determination that the act provided no immunity.
Because of our resolution of the immunity issue, it is unnecessary for us to reach the other claims of the parties. We decline to do so.
We reverse the judgment and decree.
GROSSE and KENNEDY, JJ., concur.
NOTES
[1] RCW 7.48.305; see Buchanan v. Simplot Feeders Ltd., 134 Wash.2d 673, 680, 952 P.2d 610 (1998) (addressing the same statute as it applies to agriculture).
[2] RCW 7.48.305.
[3] Noble v. Lubrin, 114 Wash.App. 812, 817, 60 P.3d 1224 (2003).
[4] Noble, 114 Wash.App. at 817, 60 P.3d 1224.
[5] (Emphasis added.)
[6] (Emphasis added.)
[7] Buchanan, 134 Wash.2d at 680, 952 P.2d 610.
[8] Buchanan, 134 Wash.2d at 681, 952 P.2d 610.
[9] Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986).
[10] Woodruff v. McClellan, 95 Wash.2d 394, 396, 622 P.2d 1268 (1980).
[11] 54 Wash.App. 589, 774 P.2d 1260 (1989).
[12] Marr, 54 Wash.App. at 594, 774 P.2d 1260.
[13] RCW 7.48.305.