111 P.3d 257 (2005)
154 Wash.2d 313
ALPENTAL COMMUNITY CLUB, INC., a Washington nonprofit corporation; Robert Kevin Johnson and Pamela Jean Ferguson, husband and wife, Petitioners,
v.
SEATTLE GYMNASTICS SOCIETY, a Washington corporation; Sahalie Ski Club, Inc., a Washington corporation; S.F. Hill Lumber Co., Inc., a Washington corporation; Portac, Inc., a Washington corporation, Respondents.
No. 75408-0.
Supreme Court of Washington, En Banc.
May 12, 2005.
Reconsideration Denied July 8, 2005.
*258 Frank Raymond Siderius, Charles Richard Lonergan, Siderius Lonergan & Martin LLP, Seattle, for Petitioners.
Joseph P. Lawrence, James Eric Carlson, Lawrence and Versnel PLLC, John Robert McDowall, Carney Badley Spellman, Eric Louis Freise, Jill Renee Skinner, Freise & Welchman, Seattle, for Respondents.
Ann Forest Burns, Bruce Henry Williams, Seattle, for Amicus Curiae Wash. Farm Forestry Assoc., Wash. Forest Protection Assoc.
OWENS, J.
¶ 1 In 1995, the Seattle Gymnastics Society, Inc. (SGS), clear-cut seven acres of upslope property to defray repairs on its ski lodge at Snoqualmie Pass in King County. The logging spawned avalanches onto the downhill property owned by members of the Alpental Community Club., Inc. (ACC), a residential community developed in 1967. At issue is whether ACC's nuisance suit against SGS is barred under RCW 7.48.305, which grants immunity to defendants who were engaged in statutorily defined "forest practices" before the plaintiffs "came to the nuisance." See RCW 7.48.310(5), 76.09.020(11).
¶ 2 The trial court determined that SGS was not entitled to statutory immunity since it had neither logged the property nor engaged in any other "forest practice" prior to 1967. The Court of Appeals reversed, concluding that SGS's ownership of the land constituted a "forest practice" predating ACC's arrival. Alpental Cmty. Club, Inc. v. Seattle Gymnastics Soc'y, 121 Wash.App. 491, 86 P.3d 784 (2004). We reverse the Court of Appeals.

FACTS
¶ 3 ACC was formed in 1967 to provide services and recreational facilities for its members, the owners and residents of lots in the Alpental plat, a subdivision located at Snoqualmie Pass in King County. One of ACC's responsibilities is to maintain the residential community's private, common roads. Among those roads is Ober Strasse, which serves approximately 29 lots, some of which have been improved with residences.
¶ 4 Since 1885, SGS has owned approximately 80 acres of upslope property east of the Alpental residential community. Sahalie Ski Club, Inc., leases property, including a ski lodge, from SGS and provides lodging and recreational facilities for its members. On November 22, 1994, for approximately $80,000, SGS sold Portac, Inc., the timber on approximately seven of the 40 acres above Ober Strasse.[1] Portac in turn contracted with S.F. Hill Lumber Co., Inc., to conduct the actual timber harvest. Hill harvested the timber in the fall of 1995 and performed some cleanup work the following spring. Hill "logged [the property] by the clear cut method, which removed all merchantable timber and the natural forest canopy that formerly had collected the snow and operated as a barrier to snow movement." Clerk's Papers (CP) at 304-05. Hill left "a small buffer of trees ... so as to provide protection from falling rocks or stumps during the project and for aesthetic purposes." CP at 304.
¶ 5 On March 1, 1997, two or three avalanches originated on SGS property and moved down the logged slope, over some lots in the Alpental plat, and across Ober Strasse. The avalanches damaged two Alpental residences below the harvested slope. *259 The owners sued SGS and others in 1997, alleging nuisance, negligence, and trespass; the suit was settled in 1999.[2] The agreement provided for the construction of an avalanche defense system (ADS)  essentially, a series of fences, three above one lot and three above the other. The ADS provided no protection for the intervening lot owned by Robert Johnson and Pamela Ferguson, and it left Ober Strasse vulnerable.
¶ 6 After the settlement and prior to the ADS construction, ACC, Johnson, and Ferguson brought the present suit, likewise alleging negligence, trespass, and nuisance and seeking abatement of the nuisance. Following a bench trial,[3] King County Superior Court Judge J. Kathleen Learned provided an oral decision in November 2001 and entered findings of fact, conclusions of law, and a judgment and decree for nuisance abatement a month later.
¶ 7 SGS appealed, contending that the trial court had erred in denying it nuisance immunity under RCW 7.48.305 and in ordering it to establish, as part of its nuisance abatement, a fund to cover possible increases in ACC's property insurance premiums. In its cross-appeal, ACC asserted that the trial court erred when it mandated a 25-year monitoring system rather than ordering the completion of the ADS. The Court of Appeals reversed the trial court in an unpublished decision and thereafter denied ACC's motion for reconsideration but granted ACC's and Washington Farm Forestry Association's motions to publish.
¶ 8 ACC petitioned for review, challenging the grant of statutory nuisance immunity to SGS and renewing the contention that the trial court should have ordered completion of the ADS rather than requiring SGS to monitor the slope for 25 years.

ISSUE
¶ 9 RCW 7.48.305 bars nuisance actions against those engaged in "forest practices" antedating the plaintiff's arrival. Was SGS's mere ownership of the seven acres of merchantable timber above ACC a "forest practice," as defined in RCW 76.09.020(11), entitling SGS to nuisance immunity?

ANALYSIS
¶ 10 Standard of Review. At issue is the interpretation of the nuisance immunity statute, RCW 7.48.305. Review is de novo. Nollette v. Christianson, 115 Wash.2d 594, 600, 800 P.2d 359 (1990).
¶ 11 Nuisance Immunity under RCW 7.48.305. The aim of the 1979 right-to-farm act, RCW 7.48.300-.310 and .905, was to protect "agricultural activities conducted on farmland ... in urbanizing areas ... from nuisance lawsuits." RCW 7.48.300. Right-to-farm statutes were enacted during the 1970s and 1980s "to address a growing concern that too much farmland was being overtaken by urban sprawl." Buchanan v. Simplot Feeders Ltd. P'ship, 134 Wash.2d 673, 677, 952 P.2d 610 (1998). In a series of amendments in 1992, the legislature expanded the right-to-farm act's protections to "forest practices in urbanizing areas." RCW 7.48.300. RCW 7.48.305 affords immunity from nuisance suits to defendants who establish that the challenged "agricultural activities" or "forest practices" met three conditions:
Notwithstanding any other provision of this chapter, agricultural activities conducted on farmland and forest practices, if consistent with good agricultural and forest practices and established prior to surrounding nonagricultural and nonforestry activities, are presumed to be reasonable and shall not be found to constitute a nuisance unless the activity has a substantial adverse effect on the public health and safety.[4]
*260 In sum, for this statute to shield a defendant from nuisance liability, there must, as a starting point, be a "forest practice" that has been identified as a nuisance. See RCW 7.48.310(5) (applying definition of "forest practice" found in RCW 76.09.020). The "forest practice" giving rise to the nuisance is then deemed reasonable and immune from nuisance liability if it (1) is "consistent with good ... forest practices," (2) was "established prior to surrounding ... nonforestry activities," and (3) does not have "a substantial adverse effect on the public health and safety."[5]
¶ 12 The threshold question is whether the nuisance that ACC alleged meets the definition of "forest practice":
"Forest practice" means any activity conducted on or directly pertaining to forest land and relating to growing, harvesting, or processing timber, including but not limited to:
(a) Road and trail construction;
(b) Harvesting, final and intermediate;
(c) Precommercial thinning;
(d) Reforestation;
(e) Fertilization;
(f) Prevention and suppression of diseases and insects;
(g) Salvage of trees; and
(h) Brush control.
"Forest practice" shall not include preparatory work such as tree marking, surveying and road flagging, and removal or harvesting of incidental vegetation from forest lands such as berries, ferns, greenery, mistletoe, herbs, mushrooms, and other products which cannot normally be expected to result in damage to forest soils, timber, or public resources.
RCW 76.09.020(11). ACC's complaint states that the SGS "property was logged by the clear cut method, which denuded the terrain and removed the natural canopy that formerly had collected the snow and operated as a barrier to snow movement." CP at 5. ACC alleges that SGS's "conduct ... in logging and otherwise altering the vegetation and terrain" of its property spawned the March 1, 1997, avalanches and "increased the likelihood of avalanching onto the Alpental Plat." CP at 6, 7. ACC sought an abatement of the nuisance created by the clear-cutting. At trial, the "forest activity" at issue was plainly SGS's "logging activity"  specifically, its "conduct ... in logging the SGS slope in 1995." CP at 309. SGS's logging activity was a "forest practice" under RCW 76.09.020(11)(b).
¶ 13 The next step in the analysis of SGS's statutory nuisance immunity is to consider the first of the three conditions stated above  that is, whether SGS's logging activity in 1995 was "consistent with good ... forest practices." RCW 7.48.305. Under RCW 7.48.305, "forest practices ... undertaken in conformity with all applicable laws and rules ... are presumed to be good ... forest practices not adversely affecting the public health and safety." The trial court concluded that "[t]he logging activity in 1995 of defendants on the SGS slope above Ober Strasse was in compliance with the Forest Practices Permit issued by the Washington State Department of Natural Resources and was not a negligent forest practice under Washington law at that time." Conclusion of Law (CL) 1, CP at 309. SGS's fulfillment of the first condition has not been disputed.
¶ 14 As a second condition to gaining statutory nuisance immunity, SGS must show that the "forest practice" giving rise to the nuisance litigation was "established prior to surrounding ... nonforestry activities." RCW 7.48.305. As this court stated in Buchanan, *261 "[m]ost of the right-to-farm statutes adopted across the country codified the common-law defense of `coming to the nuisance.'" 134 Wash.2d at 678, 952 P.2d 610 (citing Margaret Rosso Grossman & Thomas G. Fischer, Protecting the Right to Farm: Statutory Limits on Nuisance Actions Against the Farmer, 1983 Wis. L.REV. pt. 1, at 95, 118). The Buchanan court relied on legislative history to support its "finding [that] Washington's Right-to-Farm Act codifies the coming to the nuisance defense, and... justifies a narrow application of the nuisance exemption." 134 Wash.2d at 683, 952 P.2d 610.
¶ 15 Here, ACC moved to the property adjacent to SGS's property in 1967, 18 years prior to the logging activity giving rise to the nuisance lawsuits. The trial court found as follows:
There is no evidence of logging activity on the SGS property prior to establishment of the ACC plat in 1967, no apparent notice to the ACC that the property was held for logging purposes, and no established pre-existing forest practice on the SGS property. The ACC would have assumed the property was held for recreational purposes.[6]
The court thus reached the following conclusion:
The ownership of forest land by defendant SGS does not constitute a "forest practice" under RCW Ch. 76.09. The conduct of defendants in logging the SGS slope in 1995 was not a "forest practice" which predated the establishment of the ACC plat. Defendants are not immune from liability for nuisance pursuant to RCW Ch. 7.48 since the forest practice activity of defendants was not established prior to the establishment of the ACC residential subdivision.[7]
The trial court thus found that, prior to ACC's arrival in 1967, SGS had neither logged the property, nor engaged in any other "forest practice" preparatory to logging. Inherent in finding of fact 2 is the trial court's legal conclusion, stated in conclusion of law 2, that SGS's ownership of the property was not, standing alone, a "forest practice," as that term is defined in RCW 76.09.020(11).
¶ 16 In reversing the trial court, the Court of Appeals made some questionable determinations. *262 First, the Court of Appeals concluded that the trial court had erred in "focus[ing] on logging as opposed to other forest practices  growing of timber." Alpental, 121 Wash.App. at 498, 86 P.3d 784. But this misidentifies the nuisance at issue. The nuisance alleged in this case was SGS's clear-cutting of seven acres of upslope property. At no point did ACC allege that SGS's mere ownership of the upslope property or the presence of trees on the slope constituted a nuisance; to the contrary, the stand of trees prevented avalanches and provided an aesthetic backdrop. Second, the Court of Appeals did not explain what "practice" or "activity" SGS had engaged in prior to 1967 that was (1) distinct from the mere ownership of "forest land" and (2) apparently connected to the 1995 logging. RCW 7.48.305 did not make owners of agricultural and forest land immune from nuisance suits; rather, it immunized from nuisance suits "agricultural activit [ies] conducted on farmland" and "forest practices," which it defined in a nonexclusive list of "activities." RCW 7.48.305 (emphasis added), 76.09.020(11) (emphasis added). Moreover, the activities that the legislature immunized were those activities that were "often subjected to nuisance lawsuits." RCW 7.48.300; see also RCW 76.09.020(11) (excluding from the definition of "forest practice" certain activities that "cannot normally be expected to result in damage to forest soils, timber, or public resources"). Finally, the Court of Appeals ignored the Buchanan court's finding that RCW 7.48.305 was a "codifi[cation of] the coming to the nuisance defense" and was to be narrowly interpreted. 134 Wash.2d at 683, 952 P.2d 610. In sum, the Court of Appeals misidentified the nuisance, ignored the trial court's factual findings, and effectively expanded nuisance immunity to the passive ownership of forest land. We agree with the trial court that SGS's mere ownership of forest land was insufficient to constitute a preexisting "forest practice" entitling SGS to nuisance immunity.
¶ 17 Having determined that SGS had not met the second condition, the preexistence of the "forest practice" giving rise to the nuisance, we need not address the third condition  that the logging had no "substantial adverse effect on the public health and safety." RCW 7.48.305.

CONCLUSION
¶ 18 The legislature enacted RCW 7.48.305 to shield from nuisance liability certain agricultural and forestry activities that had frequently been the basis for nuisance litigation brought by plaintiffs who had "come to the nuisance." Here, SGS sought immunity under the statute for damage arising from its 1995 clear-cutting of its upslope property. Because the evidence failed to establish that SGS had, prior to ACC's arrival in 1967, logged the property or engaged in any other "forest practice" preparatory to the logging, SGS was not entitled to nuisance immunity under RCW 7.48.305. We therefore reverse the Court of Appeals on the issue of SGS's entitlement to statutory nuisance immunity. Because the Court of Appeals did not address the issue raised in ACC's cross-appeal, we remand to that court the question of whether the trial court should have ordered completion of the ADS rather than the 25-year monitoring of the slope.
We concur: ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, FAIRHURST and J.M. JOHNSON, JJ.
NOTES
[1] SGS and Sahalie used the money "to install a new roof and sprinkler system and fire prevention system on the Sahalie lodge so that the lodge complied with applicable building codes." Clerk's Papers (CP) at 304.
[2] Sullivan v. Seattle Gymnastics Soc'y, No. 97-2-26122-8 (King County Super. Ct.).
[3] Johnson and Ferguson settled prior to the final adjudication.
[4] RCW 7.48.305 (emphasis added). The following two paragraphs complete the statute:

If those agricultural activities and forest practices are undertaken in conformity with all applicable laws and rules, the activities are presumed to be good agricultural and forest practices not adversely affecting the public health and safety for purposes of this section and RCW 7.48.300. An agricultural activity that is in conformity with such laws and rules shall not be restricted as to the hours of the day or day or days of the week during which it may be conducted.
Nothing in this section shall affect or impair any right to sue for damages.
Id. (emphasis added).
[5] RCW 7.48.305. With respect to "agricultural activities," this court previously identified, although in a different order, the same three conditions for nuisance immunity: "An agricultural activity is presumed to be reasonable and shall not constitute a nuisance when: (1) the activity does not have a substantial adverse effect on public health and safety; (2) the activity is consistent with good agricultural practices, laws, and rules; and (3) the activity was established prior to surrounding nonagricultural activities." Buchanan, 134 Wash.2d at 680, 952 P.2d 610.
[6] Finding of Fact 14, CP at 305. The trial court's oral opinion provides further explanation:

The principal issue here ... was whether or not the forest practice was established prior to the surrounding non-forest activity.... [T]he facts really were not disputed that there was no logging on this land, the land owned by the Gymnastics Society.
... There was no evidence ... there was any logging in the general area prior to 1960....
But it is of significance that there was no evidence that this particular 40-acre piece ... was part of a larger parcel that had been logged. In other words, it could be significant under the analysis if there had been a thousand acres owned by Weyerha[e]user with logging here and there and then they sold 40 acres of those thousand to the Gymnastics Club. That might make for a different analysis. I am not saying that it does, but that is not the situation that we have here.
From all outside appearances, there would be no apparent notice to the Alpental Community Club that this land was either part of an established logging practices area or that it was being held for logging purposes. Whatever inquiry may have been done at the time of establishing the development, certainly it would have been reasonable to conclude that it was being held for recreational purposes, or for esthetic purposes, or for a buffer zone for the skiing activities.
RP (Nov. 14, 2001) at 3-5 (Pet. for Review, App. C).
[7] CL 2, CP at 309 (emphasis added). The trial court's oral opinion expanded the conclusion:

I find that forest land is not the same as forest practices under the statute. Under the statute each is defined separately. There is a definition for forest land [at RCW 76.09.020(9)] and it is defined as land that is capable of supporting a forest and that is not being inconsistently used.
Clearly, this slope was forest land. But "forest practices" is also defined in a separate definition in the same list of definitions [at RCW 76.09.020(11)].... When you read that definition, it clearly does not encompass the mere ownership of forest land.
Here there is nothing in the evidence to support that this land was anything other than simply natural preexisting forest land that happened to be owned by the defendant here. I find that there was, under the statute, no established preexisting forest practices prior to the development of the Alpental Community Club. For that reason, immunity does not apply to this case.
RP (Nov. 14, 2001) at 5-6 (emphasis added) (Pet. for Review, App. C).