57 Wn.2d 629 (1961)
358 P.2d 966
In the Matter of ETHEL E. LAMP.
THE STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, Respondent,
v.
OSTROM MUSHROOM COMPANY, Appellant.[1]
No. 35402.
The Supreme Court of Washington, Department Two.
January 26, 1961.
Richard C. Shanks, for appellant.
The Attorney General and John J. Champagne, Assistant, for respondent.
HILL, J.
We are here concerned with whether an employee in the canning plant and office of a company raising and canning mushrooms is entitled to unemployment compensation.
Ethel E. Lamp, who had been employed by the Ostrom Mushroom Company since 1944, made an application for unemployment compensation January 27, 1958. The department determined that no wage credits had been earned since the services she had rendered were specifically exempted under the act. She then gave notice of appeal to the appeal tribunal of the employment security department.
The appeal examiner filed, on May 8, 1958, his decision affirming the initial determination that the claimant had earned no wage credits under the act and, he concluded, that her employment was in agricultural labor and, hence, exempt.
May 19th, the commissioner of the department caused notice to issue that the claim was being taken under advisement pursuant to RCW 50.32.070. May 26th, he filed a decision reversing the appeal tribunal, ruling that she was under the employment security act and directing that benefits, i.e., unemployment compensation be paid to her.
The company then appealed to the Superior Court of King County, which affirmed the commissioner; subsequently the company appealed to this court.
*631 The company has a growing shed and, adjacent thereto, a processing plant where it cans all of its mushrooms; it does no canning for anyone else.
The commissioner found, and it is not disputed, that the growing shed required approximately eight employees, who picked the mushrooms under the supervision of one man. Other employees (who had been under the supervision of the claimant Mrs. Lamp) performed all necessary duties in conjunction with the processing and canning of the mushrooms. Mrs. Lamp also spent considerable time handling payrolls, invoicing, billing, and related bookkeeping duties, as well as taking telephone orders. While she handled the payroll of those engaged in growing and picking the mushrooms, as well as those employed in processing them, a considerable amount of her clerical duties had to do with sales of the canned mushrooms, and all of her supervisory duties had to do with the processing end of the business.
[1, 2] The agricultural-exemption section of the statute (RCW 50.04.150) provides that the term "employment" shall not include service performed,
"On a farm, ... in connection with the cultivation of the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, ..."
It further provides that employment under the act shall not include,
"... packing, packaging, grading, storing, or delivering to storage, or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations...."
Counsel for the mushroom company makes a persuasive argument: that the raising of mushrooms is an agricultural pursuit, and that the cleaning, peeling, and canning on the company's premises is but a step in the process of preparing them for market.
We desire to make it clear that we have no quarrel with the position that the handling of payrolls, bookkeeping, and record keeping can be agricultural labor, i.e., they are *632 incident and corollary to the cultivation of land and to the growing, harvesting, and transportation of crops. In re Butler (1940), 258 App. Div. 1017, 16 N.Y.S. (2d) 965. Indeed, it becomes increasingly apparent that almost every farmer needs an accountant and, perhaps, a lawyer at his elbow. In the Butler case it is said:
"... Farming, when conducted in a business-like manner, does not lose its identity. An employee who keeps records concerning the production of farm produce and its sale is engaged in tilling the soil as well as the employee who stirs the surface of the earth with a hoe. The acts are interrelated and on a farm of the size owned by this employer, conducted as he conducted the business, the scrivener and accountant are as necessary as the cultivator."
Had mushrooms remained anonymous as an "agricultural or horticultural commodity," we might have been convinced by counsel's argument; but a specific exemption from the definition of "employment" under the statute was made for "service in connection with the raising or harvesting of mushrooms." RCW 50.04.250 (Laws of 1941, chapter 253, § 14, p. 904). To indicate the complete separation from the agricultural and horticultural, it should be noted that this exemption followed immediately exemptions from the definition of "employment" under the statute of "service performed by an insurance agent or insurance solicitor ... to the extent he is compensated by commission"; "service as a newsboy selling or distributing newspapers on the street or from house to house." And in that, or similar, company it has remained through statutory changes in 1943 (chapter 127, § 13), and 1945 (chapter 35, § 26).
A literal reading of the section of the statute (RCW 50.04.250) shows that the legislature intended to exempt from the operation of the unemployment statute "service in connection with the raising or harvesting of mushrooms," but there is no such intention indicated with reference to the processing of mushrooms by canning. The mushroom company would have us rewrite the statute to read that the term "employment" shall not include "service in connection *633 with the raising, harvesting, or processing of mushrooms." We have no authority to add the word "or processing" to the statute.
We appreciate that had the legislature copied the federal statute, relative to the exemption of agricultural labor, and included the raising or harvesting of mushrooms in the term "agricultural labor," a different result might have been reached.
Our study of the development of the federal act leads us to believe that the growing of mushrooms  sometimes in caves and sometimes in growing sheds in cities (as is the situation in the instant case)  has constantly raised questions as to whether the labor in the growing and harvesting of mushrooms was performed on a "farm"; so, to remove all doubt, the federal act was amended to specifically include the growing and harvesting of mushrooms in exempted agricultural labor. Title 26 U.S.C.A., § 3306 (k), subd. (3), and this made available to mushroom growers the further provisions of the act, which extends agricultural labor to include
"... drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; ..." 26 U.S.C.A. § 3306 (k), subd. (4).
Unfortunately for the mushroom company our legislature did not include the growing and harvesting of mushrooms in its definition of agricultural labor, and we cannot do it because of the specific exemption  entirely apart from the exemptions relating to agricultural labor.
The mushroom company also urges that the commissioner lacked jurisdiction in taking the case under advisement May 19, 1958; the notice of the decision of the appeal tribunal having been given May 8th.
[3] The first contention is that the commissioner's act, in taking the case under advisement, was not timely inasmuch as the period within which he must act is ten days from the mailing date of the appeal-tribunal decision. RCW 50.32.070. May 19, 1958, was the eleventh day. However, *634 we take judicial notice that May 18, 1958, which was the tenth day, was Sunday. The commissioner's act (taking the case under advisement on the next following business day, Monday, May 19th) was timely. RCW 1.12.040; RCW 4.28.005; State v. Levesque (1940), 5 Wn. (2d) 631, 106 P. (2d) 309; State ex rel. Evans v. Superior Court (1932), 168 Wash. 176, 11 P. (2d) 229; Allen v. Morris (1915), 87 Wash. 268, 151 Pac. 827; Perkins v. Jennings (1902), 27 Wash. 145, 67 Pac. 590.
[4] The second contention is that the commissioner's record, originally before the superior court, did not show affirmatively that the commissioner took the case under review May 19, 1958, and that notices of that act were mailed to the interested parties on that day, as required by RCW 50.32.070.
It must be borne in mind that the mushroom company is not contending that the commissioner did not enter the order taking the case under advisement May 19, 1958; neither is it contending that the commissioner did not mail copies of this order to the interested parties on that date; nor is it contending that the interested parties did not timely receive copies of the commissioner's order taking the case under advisement.
It was the timely making of the commissioner's order and the timely mailing of the order to interested parties, which were the jurisdictional facts, and not whether the record, as originally submitted, evidenced these facts. The record can always be corrected to furnish proof of the jurisdictional facts. Williams v. Steamship Mut. Underwriting Ass'n (1954), 45 Wn. (2d) 209, 273 P. (2d) 803; John Hancock Mut. Life Ins. Co. v. Gooley (1938), 196 Wash. 357, 83 P. (2d) 221, 119 A.L.R. 1327; Ranch v. Werley (1907), 152 Fed. 509.
We find no merit in either phase of the jurisdictional argument.
The judgment is affirmed.
FINLEY, C.J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.
March 13, 1961. Petition for rehearing denied.
NOTES
[1] Reported in 358 P. (2d) 966.