98 P.3d 1277 (2004)
VICWOOD MERIDIAN PARTNERSHIP, a Washington partnership; Lewis Fairfield, an individual; Renate Gillespie, an individual; Joseph Picucci and Ursula Picucci, husband and wife; Starling Ridgeway and Amy Ridgeway, husband and wife; James Rosmaryn, an individual; Carmille St. Onge, an individual; Richard Stickell and Christel Stickell, husband and wife, Plaintiffs,
v.
SKAGIT SAND AND GRAVEL, a Washington sole proprietorship; and Thurston County, a municipal corporation, Defendants.
Thurston County, a municipal corporation, Appellant/Third Party Plaintiff,
v.
The Ostrom Company, a Washington corporation d/b/a Ostrom Mushroom Farms, Respondent/Third Party Defendant.
No. 29623-3-II.
Court of Appeals of Washington, Division 2.
October 19, 2004.
*1279 Mark Mc Lean Myers, Attorney at Law, Daniel W. Ferm, Williams Kastner & Gibbs, PLLC, Seattle, WA, for Respondents.
Jeffrey George Fancher, Attorney at Law, Thurston Co. Pros. Atty., Olympia, WA, Timothy Harold Butler, Svend A. BrandtErichsen, Heller Ehrman White & McAuliffe, LLP, Seattle, WA, Appellants.
BRIDGEWATER, J.
Thurston County appeals the trial court's summary judgment that held Ostrom Company not liable for contribution for nuisance and negligence claims for damages arising from its operation of the Thurston County landfill. We hold that the Right-to-Farm Act protects Ostrom from contribution because its compost preparation procedure for its mushroom farm is an agricultural activity "that occurs in connection with the commercial production of farm products." We affirm.
Ostrom Company took over the operations of a mushroom farm in 1967. The farm had operated at the corner of Marvin Road and Steilacoom Road in Olympia, Washington since the late 1920s. When Ostrom took over the farm, the area surrounding it was rural. Now residential neighborhoods surround the farm.
Composting is a necessary component of Ostrom's mushroom growing operation. To make its compost, Ostrom mixes dried poultry waste and wheat straw, which emits an odor when wet.
Ostrom has worked with its neighbors and government agencies, like the Olympic Air Pollution Control Authority (OAPCA), to control the odors from its operations. In the 1980s, Ostrom used a misting system around the perimeter of its farm in order to mitigate odors. In the early 1990s, Ostrom added an aeration system as another way to help reduce odors emitted from its compost piles. From 1990 to 2000, Ostrom also monitored the nearby neighborhoods for smells coming from its operations.
In 1999, Ostrom constructed an indoor composting facility (ICF) that allowed it to compost indoors and thus reduce the odors coming from its composting activities. After opening the ICF, Ostrom ceased the neighborhood monitoring. The ICF theoretically allows Ostrom to produce more mushrooms but, it is unable to do so because it does not have the space to grow more mushrooms.
Homeowners near the Hawks Prairie Landfill brought nuisance and negligence claims against Thurston County and Skagit Sand and Gravel, the operator of the landfill, because of odors, birds, garbage, and bird feces. The homeowners alleged that hazardous substances and odors released from the landfill had interfered with their use and enjoyment of their land. The court permitted Thurston County to file a third-party complaint against Ostrom for contribution for odor impacts because some of the odors the plaintiffs experienced originated in whole or in part from Ostrom's mushroom farm.
Ostrom moved for summary judgment, seeking to dismiss the third-party complaint. It argued in its motion that it could not be *1280 held liable on the plaintiffs' nuisance theory because it engaged in agricultural activity protected under the Right-to-Farm Act. The trial court granted Ostrom's motion and dismissed Thurston County's third-party complaint. Thurston County appeals the trial court's order dismissing its contribution claim against Ostrom.[1]

I. Standard of Review
We review a trial court's order granting summary judgment de novo. Ski Acres, Inc. v. Kittitas County, 118 Wash.2d 852, 854, 827 P.2d 1000 (1992). Summary judgment is appropriate where the "pleadings, affidavits, depositions, or admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Meissner v. Simpson Timber Co., 69 Wash.2d 949, 951, 421 P.2d 674 (1966) (quoting Balise v. Underwood, 62 Wash.2d 195, 199, 381 P.2d 966 (1963)).
As the non-moving party, Thurston County had to present a sufficient factual basis to support a genuine issue of material fact. Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 365, 753 P.2d 517 (1988). Its conclusory opinions are not material facts admissible in evidence showing there is a genuine issue for trial. Grimwood, 110 Wash.2d at 365, 753 P.2d 517. Here, Thurston County offers only speculative theories about Ostrom's contribution to odors in the class area. This was insufficient to preclude summary judgment.

II. Right-to-Farm Act
Thurston County argues the trial court erred by applying the Right-to-Farm Act (RTFA) to Ostrom. We disagree.

A. History of RTFA
The Washington State Legislature enacted the Right-to-Farm Act (RTFA) in response to urban dwellers moving into agricultural areas and then filing nuisance suits because of the odors associated with farming, which threatened many farms in existence. Buchanan v. Simplot Feeders, Ltd. P'ship, 134 Wash.2d 673, 677-78, 952 P.2d 610 (1998). Right-to-farm statutes throughout the country codified the common law defense of "coming to the nuisance." Buchanan, 134 Wash.2d at 678, 952 P.2d 610 (quoting Margaret Rosso Grossman & Thomas G. Fischer, Protecting the Right to Farm: Statutory Limits on Nuisance Actions Against the Farmer, WIS L.REV. 95, 118 (1983)). Our legislature adopted the "Agricultural Activities-Protection from Nuisance Lawsuits" in 1979. Buchanan, 134 Wash.2d at 678, 952 P.2d 610. RTFA is found at RCW 7.48.300-.310 and .905 and is referred to as the Right-to-Farm Act. Buchanan, 134 Wash.2d at 678, 952 P.2d 610. Its purpose is to protect established agricultural activities from nuisance lawsuits. Buchanan, 134 Wash.2d at 681, 952 P.2d 610; RCW 7.48.300.
In ruling on Ostrom's motion for summary judgment, the trial court applied the RTFA to Ostrom's mushroom composting activities and found them protected under the RTFA. Thurston County asserts that the trial court erred by broadly applying the RTFA to Ostrom's activities and that the RTFA must be construed narrowly. To support its argument, it relies on Buchanan, 134 Wash.2d 673, 952 P.2d 610, the only case interpreting the RTFA. The supreme court held in Buchanan that:
[T]he nuisance protection afforded by the Right-to-Farm Act must be applied cautiously and narrowly. RCW 7.48.305 should not be read to insulate agricultural enterprises from nuisance actions brought by an agricultural or other rural plaintiff, especially if the plaintiff occupied the land before the nuisance activity was established. *1281 Buchanan, 134 Wash.2d at 684, 952 P.2d 610. Thus, a farmer's agricultural activities under the RTFA only constitute a nuisance where a plaintiff can prove one of the three exceptions listed in RCW 7.48.305.
RCW 7.48.305 states in part:
[A]gricultural activities conducted on farmland and forest practices, if consistent with good agricultural and forest practices and established prior to surrounding nonagricultural and nonforestry activities, are presumed to be reasonable and shall not be found to constitute a nuisance unless the activity has a substantial adverse effect on the public health and safety.
Under RCW 7.48.305, a farmer does not have immunity if a plaintiff can establish: (1) the agricultural activity has a substantial adverse effect on public health and safety; (2) the activity is inconsistent with good agricultural practices, laws, and rules; or (3) the activity was not established prior to surrounding nonagricultural activities. Buchanan, 134 Wash.2d at 680, 952 P.2d 610. Here, none of these exceptions applies.

B. Application of the Right-to-Farm Act
Thurston County argues that the trial court erred in applying the RTFA to Ostrom in two ways: (1) the court incorrectly defined "farm" and "farmland" under the RTFA to include Ostrom's indoor composting facility; and (2) the court incorrectly construed the language of the RTFA as granting immunity to composting operations at the ICF, which are not immune under the RTFA because they are a "new or radically expanded activity." Br. of Appellant at 25. Both of these arguments lack merit.

1. Definition of a "farm"
The RTFA defines "farmland" as "land or freshwater ponds devoted primarily to the production, for commercial purposes, of livestock, freshwater aquacultural, or other agricultural commodities." RCW 7.48.310(3). The statute does not define "agricultural commodities." Similarly, a farm is "the land, buildings, freshwater ponds, freshwater culturing and growing facilities, and machinery used in the commercial production of farm products." RCW 7.48.310(2). Thurston County argues that since the operations of the ICF are devoted solely to the manufacture of compost, its activity is not protected under the definition of "farmland." Br. of Appellant at 30; RCW 7.48.310(3). Thurston County asserts the holding in Donovan v. Frezzo Bros. Inc., 678 F.2d 1166, 1171 (3rd Cir.1982), supports its position that compost is not an agricultural commodity but an industrial process.
In Donovan, the Third Circuit applied the meaning of "agriculture" as defined by the Fair Labor Standards Act (FLSA) to Frezzo's production of mushroom compost. Donovan, 678 F.2d at 1168. Although the FLSA broadly defined agriculture, the Third Circuit found the definition of "agriculture" did not include the production of mushroom compost. Donovan, 678 F.2d at 1169. Part of the reason the court reached this conclusion was because Frezzo Brothers sold 90 percent of the mushroom compost to other farmers. Donovan, 678 F.2d at 1172. The Third Circuit found that the FLSA only applied to situations encompassed in the statute. Donovan, 678 F.2d at 1173. The FLSA did not define mushroom compost as an agricultural commodity. Donovan, 678 F.2d at 1172. The FLSA was so narrowly defined that it included no preliminary or preparatory operations. Donovan, 678 F.2d at 1170. But this is not true of the RTFA and thus Donovan's holding is not appropriate here.
A mushroom is "any of various enlarged complex aerial fleshy fruiting bodies of fungi." WEBSTER'S THIRD INTERNATIONAL DICTIONARY, at 1490 (1966). A fungus is "any of numerous chiefly saprophytic or parasitic plants that constitute the division Fungi ... includ[ing] ... mushrooms." WEBSTER'S THIRD INTERNATIONAL DICTIONARY, at 922. Also, a mushroom is a plant useful to humans *1282 under RCW 7.48.310(4).[2] As stated above, a farm includes land and buildings "used in the commercial production of farm products." RCW 7.48.310(2). Since mushrooms are farm products, the ICF, which produces compost for the mushrooms to grow, is an "agricultural activity" because it is an "activity which occurs ... in connection with the commercial production of farm products ... and includes ... odors."[3] Mushrooms cannot grow without the compost and, therefore, the compost activities cannot be separated from the mushroom growing in the manner Thurston County argued.
Thurston County cites In re Lamp, 57 Wash.2d 629, 358 P.2d 966 (1961), to argue that growing mushrooms is not done on a "farm." But, the supreme court decided this case prior to the enactment of the RTFA, and as such, it is not useful to resolve this appeal.

2. New or Expanded Activity
Thurston County failed to preserve the issue of whether Ostrom's indoor composting facility is a new or expanded activity because it did not present it to the trial court. Therefore, this court need not consider it. RAP 2.5(a). Wesche v. Martin, 64 Wash.App. 1, 6-7, 822 P.2d 812 (1992). But, we choose to address it, finding the position meritless.
Thurston County argues that the ICF is a new or expanded activity and not immune under the RTFA. While the ICF is a new building, the process of composting to produce mushrooms is not a new activity. Ostrom only moved its open air composting to a controlled indoor composting facility. This is not a new activity. Further, it is also not an expanded activity because Ostrom has always used compost. Thurston County also failed to provide evidence that Ostrom produces more compost since moving into its indoor facility.
Thurston County asserts that the ICF is a new activity because the OAPCA regulated the ICF as a new source. The OAPCA regulated the building of the ICF as a new source of pollution because it increased Ostrom's ability to produce compost. But as previously stated, nothing in the record shows that Ostrom now produces more compost than before opening its ICF. Thurston County also offers the evidence that Ostrom ceased monitoring nearby neighborhoods when it opened the ICF. But this evidence is not significant.
Ostrom ceased monitoring due to the odor reduction it believed the ICF would produce. The record, however, is devoid of any study done by either Ostrom or Thurston County that shows either a decrease or an increase in odors reaching the class area. In fact, Thurston County's expert stated in his deposition that a study was necessary to adequately determine what was causing the odors in the class area.
Thurston County presents some creative theories but none shows a statutory exception *1283 listed in RCW 7.48.305. Thurston County failed to show that Ostrom's composting activities had a "substantial adverse effect" on the class claimants' health. RCW 7.48.305. It also provided no evidence that Ostrom's composting activities were inconsistent with "good agricultural practices, laws, and rules." Buchanan, 134 Wash.2d at 680, 952 P.2d 610. Finally, Ostrom's has operated its farm since 1967, long before the class claimants moved to the area.

III. Negligence
Thurston County next asserts the trial court erred by granting Ostrom's motion for summary judgment with regard to negligence. Thurston County argues the doctrine of res ipsa loquitur applies to the present case. Thurston County failed to raise this argument below and as such, it is not preserved. Nonetheless, the doctrine does not apply because Thurston County cannot prove its elements.
Thurston County proposes that a party suing for contribution can rely on the theory of res ipsa loquitur when the premise for the contribution claim is that injury was caused to someone else. It fails, however, to cite to any authority that supports this proposition.
A party can apply the doctrine of res ipsa loquitur based on circumstantial evidence when that evidence shows that "(1) the accident or occurrence producing the injury is of a kind that ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff." Pacheco v. Ames, 149 Wash.2d 431, 436, 69 P.3d 324 (2003) (quoting Zukowsky v. Brown, 79 Wash.2d 586, 593, 488 P.2d 269 (1971)).
"Whether an injury supports a reasonable and legitimate (as opposed to conjectural) inference of negligence requires that the context, manner, and circumstances of the injury are `of a kind that do not ordinarily happen in the absence of someone's negligence.'" Robison v. Cascade Hardwoods, Inc., 117 Wash.App. 552, 565-66, 72 P.3d 244 (2003) (citing Zukowsky, 79 Wash.2d at 594-95, 488 P.2d 269), review denied, 151 Wash.2d 1014, 89 P.3d 712 (2004). In Washington, res ipsa loquitur applies in three situations:
"(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries."
Pacheco, 149 Wash.2d at 438-39, 69 P.3d 324 (quoting Zukowsky, 79 Wash.2d at 595, 488 P.2d 269).
Here, there is no evidence of "palpabl[e]" negligence (quoting Pacheco, 149 Wash.2d at 438, 69 P.3d 324). Thurston County provides no concrete evidence of negligence, only its theories. Next, the general experience and observation of mankind does not instruct that the mixture of dried chicken waste and wheat straw into compost never smells unless someone is negligent. Finally, Thurston County offered no expert testimony that Ostrom's composting techniques were the proximate cause of any harm to any person in the Class Area. Simply put, Thurston County provides no basis for applying the doctrine of res ipsa loquitur and its argument fails.
The trial court did not err in granting summary judgment. The Right-to-Farm Act protects Ostrom from liability for its composting operation in connection with its commercial farm activity of mushroom farming.
Affirmed.
We concur: HOUGHTON, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] Thurston County and Skagit Sand and Gravel settled with the class plaintiffs after the appeal in this case. The settlement agreement did not mention Ostrom. We do not address whether this omission prohibits contribution under RCW 4.22.040 because it was not presented to the trial court and preserved. RAP 2.5(a); RAP 9.12. Nonetheless, we dispose of the case by addressing the Right-to-Farm Act.
[2] RCW 7.48.310(4) states in part:

[T]hose plants and animals useful to humans and includes, but is not limited to, forages and sod crops, dairy and dairy products, poultry and poultry products, livestock, including breeding, grazing, and recreational equine use, fruits, vegetables, flowers, seeds, grasses, trees, freshwater fish and fish products, apiaries, equine and other similar products, or any other product which incorporates the use of food, feed, fiber, or fur.
[3] "Agricultural activity" is defined as:

[A] condition or activity which occurs on a farm in connection with the commercial production of farm products and includes, but is not limited to, marketed produce at roadside stands or farm markets; noise; odors; dust; fumes; operation of machinery and irrigation pumps; movement, including, but not limited to, use of current county road ditches, streams, rivers, canals, and drains, and use of water for agricultural activities; ground and aerial application of seed, fertilizers, conditioners, and plant protection products; employment and use of labor; roadway movement of equipment and livestock; protection from damage by wildlife; prevention of trespass; construction and maintenance of buildings, fences, roads, bridges, ponds, drains, waterways, and similar features and maintenance of streambanks and watercourses; and conversion from one agricultural activity to another.
RCW 7.48.310(1).